

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAR 1 2 2015
Madsen C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on March 12, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| DANI FERGEN, individually and as personal representative of the ESTATE OF PAUL J. FERGEN, and minors, BRAYDEN FERGEN and SYDNEY FERGEN, individually, | No. 88819-1 (consolidated with No. 89192-3) |
| Petitioners, | |
| v. | |
| JOHN D. SESTERO, M.D., individually, and as an employee/ shareholder/agent of Defendant Spokane Internal Medicine and SPOKANE INTERNAL MEDICINE, P.S., a Washington corporation, | En Banc |
| Respondents. | Filed MAR 1 2 2015 |
| ANIL APPUKUTTAN, | |
| Appellant, | |
| v. | |
| OVERLAKE MEDICAL CENTER, PUGET SOUND PHYSICIANS, PLLC, ALAN B. BROWN, M.D., MARCUS TRIONE, M.D., and TINA NEIDERS, M.D., | |
| Respondents. | |

FAIRHURST, J.—"The most critical element of most medical malpractice claims based on negligence . . . is the standard of care owed by the doctor to his or her patient." *Watson v. Hockett*, 107 Wn.2d 158, 162, 727 P.2d 669 (1986). In order to provide a lay jury with the best possible understanding of this fundamental, yet often confusing, component of legal liability, supplemental standard of care instructions are sometimes used in addition to the basic instructions. One of these supplemental instructions is the exercise of judgment instruction, which reminds juries that if a physician exercises the reasonable care and skill generally required by his or her position, just choosing between alternate treatments or diagnoses does not make them legally liable for making a wrong choice.

This is a consolidated case of two medical malpractice suits. In each case, an exercise of judgment jury instruction similar to 6 *Washington Practice: Washington Pattern Jury Instructions: Civil* 105.08 (6th ed. 2012) (WPI) was given.[1] Both juries found in favor of the defendants and both plaintiffs assign error. We affirm the trial court's use of the exercise of judgment jury instruction in both cases. We hold that evidence of consciously ruling out other diagnoses is not required; a defendant need only produce sufficient evidence of use of clinical judgment in diagnosis or

---

[1]WPI 105.08 reads, "A physician is not liable for selecting one of two or more alternative [courses of treatment] [diagnoses], if, in arriving at the judgment to [follow the particular course of treatment] [make the particular diagnosis], the physician exercised reasonable care and skill within the standard of care the physician was obliged to follow." (Alteration in original.)

2

treatment to satisfy a trial judge that the instruction is appropriate. We reaffirm that this instruction is supported in Washington law and has not been shown to be incorrect or harmful.

## I.     FACTS AND PROCEDURAL HISTORY

### A.    *Fergen v. Sestero*

In November 2004, Paul Fergen found a small lump on his ankle that was causing slight discomfort. The next week he went to see Dr. John Sestero regarding the lump. Sestero completed a physical examination of the ankle and described the lump in his chart notes as a "slight nodule" that was "smooth, soft, and nontender." Fergen Ex. (FE) P-1, at 12. Fergen was not experiencing any redness, swelling, or other abnormalities. Sestero assessed it as a ganglion cyst,[2] ordered an X ray to make sure there were no structural defects, referred Fergen to an orthopedic specialist, and instructed him to follow up with his office as necessary. The X ray confirmed an absence of any problems in the ankle, but the radiologist noted, "If a soft tissue cyst is felt an ultrasound might be of help." FE P-1, at 155. Sestero informed Fergen that the X ray was negative but did not order an ultrasound.

Approximately 13 months later, Fergen suffered a seizure. Thereafter, he was diagnosed with Ewing's sarcoma, a rare and aggressive form of metastatic cancer

---

[2]Sestero's notes did not say "benign" explicitly, but a ganglion cyst is a fluid-filled cyst that is considered to be benign.

that originated in the lump on his ankle. After an extended course of treatment involving radiation and chemotherapy, Fergen died.

Sestero's records do not contain any indication that he entertained diagnoses of the lump other than a ganglion cyst. During trial, he testified as to his use of clinical judgment during his thought process that day, including why he believed it to be a cyst and why he ordered certain tests. He testified that "malignancy" is "a consideration anytime you see a lump," although he never specifically said he considered it that day. 4 Fergen Verbatim Report of Proceedings at 609. Defense medical experts testified that the applicable standard of care did not require Sestero to order an ultrasound, biopsy, or other test to rule out cancer, or to make a referral to a specialist, or even to X ray the lump.

Dani Fergen, individually and as personal representative of the estate of Paul Fergen, as well as their minor children, Brayden Fergen and Sydney Fergen, individually filed suit against Sestero and his employer, Spokane Internal Medicine PS, alleging negligence and breach of the standard of care for failing to take the steps necessary to ensure that the lump on Fergen's ankle was, in fact, a benign ganglion cyst. Fergen says Sestero simply diagnosed it as a benign cyst without considering other diagnoses or doing anything to confirm or disprove that the lump was benign and thus there is no evidence of a conscious choice. Sestero countered that his diagnosis of a benign cyst inherently involved the exercise of clinical judgment since

selection of one diagnosis necessarily entails the rejection of other possible, less likely, diagnoses.

The trial judge gave the jury instruction on a physician's exercise of judgment. It read, "A physician is not liable for selecting one of two or more alternative diagnoses, if, in arriving at a diagnoses a physician exercised reasonable care and skill within the standard of care the physician was obligated to follow." Fergen Clerk's Papers at 3198. The jury found for the defendant, and Fergen appealed. The Court of Appeals affirmed. *Fergen v. Sestero*, 174 Wn. App. 393, 398, 298 P.3d 782 (2013). We granted Fergen's petition for review. *Fergen v. Sestero*, 178 Wn.2d 1001, 308 P.3d 641 (2013).

B.    *Appukuttan v. Overlake Medical Center*

Anil Appukuttan suffered an injury to his left lower leg during a soccer game. Over the next four days he visited the Overlake Medical Center emergency department on five occasions for persistent and worsening pain and increasing firmness in his left leg. He saw multiple physicians, each of whom performed physical examinations. None measured the pressure in his leg to rule out compartment syndrome, as each believed their physical examinations indicated other diagnoses.[3] Ultimately, Appukuttan was diagnosed with compartment syndrome on

---

[3]Compartment syndrome is elevated pressure in muscle compartments that causes extreme pain from a lack of blood supply to the muscles.

5

his left calf and a fasciotomy was performed. Unfortunately, he suffered permanent foot drop injury as a result of the failure to diagnose and treat his compartment syndrome.

Appukuttan filed this medical negligence action against Overlake Medical Center, Puget Sound Physicians PLLC, Alan B. Brown MD, Marcus Trione MD, and Tina Neiders MD, alleging negligent treatment during his hospital visits. At trial, Appukuttan offered testimony that the physicians violated the standard of care by failing to take the steps necessary to rule out or confirm compartment syndrome. Conversely, the physicians testified they tested for the symptoms during physical exams but, using their medical judgment, ruled it out as the diagnosis and followed other courses of treatment.

The trial court gave the exercise of judgment instruction that read as follows:

> A physician is not liable for selecting one of two or more alternative courses of treatment or diagnoses, if, in arriving at the judgment to follow the particular course of treatment or make the particular diagnosis, the physician exercised reasonable care and skill within the standard of care the physician was obliged to follow.

Appukuttan Clerk's Papers at 23. The jury found for the defense, and Appukuttan appealed to the Court of Appeals, challenging the exercise of judgment instruction. He then moved to transfer the appeal to this court. We granted the transfer and consolidated it with Fergen's case.

## II.   ISSUES PRESENTED

A.   Is the exercise of judgment jury instruction supported under Washington law?

B.   Must there be substantial evidence of a conscious choice between alternate diagnoses before a judge may give the exercise of judgment jury instruction or may the judge use his or her discretion to give the instruction when he or she determines there is sufficient evidence to demonstrate the physician exercised professional judgment in making a diagnosis?

C.   Should this court disapprove the instruction altogether in medical malpractice cases as incorrect and harmful?

## III.   STANDARD OF REVIEW

Whether to give a certain jury instruction is within a trial court's discretion and so is reviewed for abuse of discretion. *Christensen v. Munsen*, 123 Wn.2d 234, 248, 867 P.2d 626 (1994); *Seattle W. Indus., Inc. v. David A. Mowat Co.*, 110 Wn.2d 1, 9, 750 P.2d 245 (1988); *Thomas v. Wilfac, Inc.*, 65 Wn. App. 255, 264, 828 P.2d 597 (1992) (citing *Petersen v. State*, 100 Wn.2d 421, 440, 671 P.2d 230 (1983)). The propriety of a jury instruction is governed by the facts of the particular case. *Housel v. James*, 141 Wn. App. 748, 759, 172 P.3d 712 (2007). Jury instructions are generally sufficient if they are supported by the evidence, allow each party to argue its theory of the case, and when read as a whole, properly inform the trier of fact of the applicable law. *Id.* at 758; *Keller v. City of Spokane*, 146 Wn.2d 237, 249, 44 P.3d 845 (2002); *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 860, 281 P.3d 289 (2012).

7

Legal errors in jury instructions are reviewed de novo. *Anfinson*, 174 Wn.2d at 860. An erroneous instruction is reversible error only if it is prejudicial to a party. *Id.* If the instruction contains a clear misstatement of law, prejudice is presumed and is grounds for reversal unless it can be shown that the error was harmless. *Id.* (citing *Keller*, 146 Wn.2d at 249-50); *Ezell v. Hutson*, 105 Wn. App. 485, 492, 20 P.3d 975 (2001). The party challenging an instruction bears the burden of establishing prejudice. *Griffin v. W. RS, Inc.*, 143 Wn.2d 81, 91, 18 P.3d 558 (2001); *Miller v. Yates*, 67 Wn. App. 120, 125, 834 P.2d 36 (1992).

## IV. ANALYSIS

A. Washington law supports the use of an exercise of judgment instruction in appropriate medical malpractice cases

Petitioners first urge the court to find that this instruction is not fully accepted in Washington law. We reject this invitation and reaffirm that this court has consistently approved of the exercise of judgment jury instruction in appropriate medical malpractice cases. *Miller v. Kennedy*, 85 Wn.2d 151, 151-52, 530 P.2d 334 (1975) (*Miller* II) ("We can add nothing constructive to the well considered opinion of [the Court of Appeals] and, accordingly, approve and adopt the reasoning thereof." (citing *Miller v. Kennedy*, 11 Wn. App. 272, 280, 522 P.2d 852 (1974) (*Miller* I) (instruction is an appropriate statement of the law))); *Miller v. Kennedy*, 91 Wn.2d 155, 160, 588 P.2d 734 (1978) (*Miller* III) (reminded parties that the court explicitly approved of the instruction in *Miller* II and held that the instruction was

appropriate under these facts because the physician utilized judgment in performing the biopsy procedure); *Watson*, 107 Wn.2d at 164-65 (reminded parties of unanimous decision in *Miller* III and again affirmed the propriety of this instruction); *Christensen,* 123 Wn.2d at 238 (affirmed *Watson* and held that use of the instruction is proper in the appropriate factual situation).

Over the years, the wording on the instruction has changed to improve the instruction and address specific diction concerns. *Dinner v. Thorp*, 54 Wn.2d 90, 98, 338 P.2d 137 (1959) (the court eliminated "good faith" from the instruction, holding that a physician must exercise skill and learning, not just good faith); *Watson*, 107 Wn.2d at 164-65 (future jury instructions should remove the word "honest" since it inserts an argumentative aspect not appropriate for jury instruction practice); WPI 105.08, at 612-13 ("error of judgment" was changed to "exercise of judgment" in order to eliminate juror misunderstanding of the interplay between the standard of care and a physician error). Despite this language clarification, the use of the instruction itself continues to be affirmed.

Our cases consistently state that the error in judgment instruction is a useful tool to remind juries of the fallibility of medicine. *Watson*, 107 Wn.2d at 167 ("'these doctrines provide useful watchwords to remind judge and jury that medicine is an inexact science where the desired results cannot be guaranteed, and where professional judgment may reasonably differ as to what constitutes proper

treatment'" (emphasis omitted) (quoting Jim M. Perdue & Read Khoury, *The Law of Texas Medical Malpractice: Second Edition*, ch. 2, "Standard of Care," 22 HOUS. L. REV. 47, 60 (1985))). But they have also held that this instruction is not appropriate in every medical malpractice action, only those based in negligence where the doctor faced a diagnostic or treatment choice that called on his or her judgment. *Id.* at 165 ("This 'error in judgment' instruction is, however, to be given with caution."). It may be given to supplement a general instruction on the proper standard of care only when there is evidence that the physician complied with that standard of care and skill required by the circumstances. *Christensen,* 123 Wn.2d at 238; *Miller* I, 11 Wn. App. at 280; *Watson,* 107 Wn.2d at 165. While "[t]he exercise of professional judgment is an inherent part of the care and skill involved in the practice of medicine," this instruction is limited to situations where the doctor uses judgment to choose between alternative treatments or diagnoses. *Miller* III, 91 Wn.2d at 160; *Watson,* 107 Wn.2d at 165. This instruction is well integrated into the system of jury instructions in Washington.

Further, this instruction is not preempted by chapter 7.70 RCW. This court has previously rejected this argument in both *Watson* and *Gerard v. Sacred Heart Medical Center*, 86 Wn. App. 387, 937 P.2d 1104 (1997). *Watson,* 107 Wn.2d at 166 (court held that the statutory standard of care change from an *average* practitioner to a *reasonably prudent* practitioner did not affect the use of

supplemental jury instructions); *Gerard*, 86 Wn. App. at 388 (court affirmed the use of the exercise of judgment jury instruction despite the argument it was contrary to the objective standard of care established in RCW 7.70.040). The exercise of judgment instruction is a supplemental instruction that cannot be given separate from the basic standard of care instruction. *See Christensen*, 123 Wn.2d at 249 (citing *Watson*, 107 Wn.2d at 166). It is used to clarify the general standard of care; it does not alter it or add any additional elements for a plaintiff to prove. We follow this clear precedent and again approve of the use of the exercise of judgment jury instruction here.

B.      Case law supports a broad interpretation of when a physician is making a
        choice between reasonable alternative treatments or diagnoses

Petitioners next argue that in order for this instruction to be given, the physician must present clear evidence of a conscious choice between alternate diagnoses or treatments. In Washington, an exercise of judgment instruction is justified when (1) there is evidence that the physician exercised reasonable care and skill consistent with the applicable standard of care in formulating his or her judgment and (2) there is evidence that the physician made a choice among multiple alternative diagnoses (or courses of treatment). *Watson*, 107 Wn.2d at 165; *Christensen*, 123 Wn.2d at 249. Neither of these consolidated cases present an issue regarding the first requirement because that was the subject of expert testimony at

each trial and there was substantial evidence to support the defendant-physician's assertions of competency.

The issue for this court involves the second requirement—what evidence is sufficient to prove that the physician made a choice in the treatment or diagnosis to justify this instruction? Our cases have found the evidence to be sufficient to give the instruction when the physician used judgment in making a diagnostic choice or choosing a treatment plan. In the second appeal of *Miller*, the court held that "the exercise of professional judgment is an inherent part of the care and skill involved in the practice of medicine." *Miller* III, 91 Wn.2d at 160. It held that "performing the delicate surgery of a kidney biopsy" used the physician's judgment, so the situation was one entitled to the instruction. *Id.*

In *Christensen*, a woman with eye disease became legally blind under the care of an ophthalmologist and sued, claiming he breached the standard of care. 123 Wn.2d at 237-38. In analyzing the error of judgment instruction, the court noted that there were three defense experts who testified that the ophthalmologist acted within the standard of care, but that they each would have treated the woman's eye disease differently. *Id.* at 249. The court considered this to be sufficient evidence that the defendant had a choice of therapeutic techniques within the proper standard of care and used his judgment to choose which course of treatment to take. The court held that the instruction was appropriate. *Id.*

12

Turning to some of the decisions by the appellate courts, we consistently see a low bar that must be satisfied for the court to hold that a physician made a choice between treatments or diagnoses. The facts of *Vasquez v. Markin*, 46 Wn. App. 480, 481-82, 489, 731 P.2d 510 (1986), recite a course of treatment by a gynecologist including the choice between interrupting one surgery to perform another or asking another physician to perform the other surgery. The court concluded the physician clearly exercised judgment. *Id.* at 489 ("Here, Dr. Markin presented evidence of reasonable care, and was confronted with the situation where he had to make a choice."). In *Thomas*, 65 Wn. App. at 258, a woman working with pesticides developed flu-like symptoms and went to the emergency room where the physician "ruled out pesticide poisoning and diagnosed asthma." Without further discussion of the physician's judgment, the court held this was sufficient to demonstrate the instruction was warranted under these facts. *Id.* at 264. In *Gerard*, 86 Wn. App. at 389, the court held that a physician's decision whether to use restraints on a patient is a choice of treatment supporting the instruction. In *Ezell*, the judgment exercised by the physician was deciding to treat a postoperation infection with a particular type of antibiotic when a different antibiotic was needed to clear up the infection. 105 Wn. App. at 488-89. The court approved of the use of this instruction under these facts. *Id.* In *Housel*, a woman developed an abscess months after a hernia repair and she sued the surgeon who performed the repair. 141 Wn. App. at 752-53. Despite a

reiteration of the cautions of *Watson*, the court held the instruction was proper, saying, "[T]he record discloses that Dr. James was presented with at least three treatment choices: additional testing, watchful waiting, or surgical repair of the hernia." *Id.* at 760.

This albeit scattered case law nonetheless demonstrates the court interpreting very broadly the requirement that a "doctor is confronted with a choice among competing therapeutic techniques or among medical diagnoses." *Watson*, 107 Wn.2d at 165. Even read broadly, this instruction is not proper in every medical malpractice case, even when appropriate it is not always required.[4] It should only be given when the doctor chooses between reasonable, medically acceptable options; it should not be given simply if a physician is practicing medicine at the time. It is not appropriate in other malpractice actions such as one focused on the inadequate skills of the physician. We require the physician to make a choice for this instruction, but we interpret that phrase to encompass any "exercise of professional judgment" in treatment or diagnosis. *Miller* III, 91 Wn.2d at 160.

Sestero made many choices that necessarily involved his judgment. He had a choice between referring Fergen to a specialist or not. He had a choice between

---

[4]The error of judgment instruction is not required for the defense to present its theory in every malpractice case. *Seattle W. Indus.*, 110 Wn.2d at 9; *see also Watson*, 107 Wn.2d at 169. Jury instructions are reviewed as a whole to determine if they permit a party to argue his or her theory of the case. *Anfinson*, 174 Wn.2d at 860.

ordering an X ray or not. He had a choice between ordering follow up testing or not. Expert testimony showed that all of those choices were within the standard of care based on a one-week old, small, soft lump on an ankle. Sestero testified that the lump being cancerous was so exceedingly rare that it was far down the list of possible ailments and he is not sure if he considered it as an actual possibility. This indicates that he considered various diagnoses and made a choice between them using his medical judgment—he just chose wrong. This is in line with all the guidelines from Washington case law regarding a choice in treatment.

Similarly, the physicians in *Appukuttan* made diagnostic choices based on their medical judgment. They testified regarding the details of their physical examinations. They looked for the warning signs and symptoms of compartment syndrome and testified that in their judgment, they did not find them. They made a choice in whether to perform the additional pressure test but determined it was unnecessary because their physical examination did not indicate that compartment syndrome was the diagnosis, and instead another problem was likely the cause of his symptoms.

Misdiagnosis and the inexactness of medicine is not the basis for liability without a deviation from the proper standard of care. Both of these cases present a proper situation for the instruction. The juries needed to focus on whether the physicians failed to exercise the requisite degree of skill, care, and learning in

arriving at the diagnosis, and this instruction aided in that determination. In each of these cases the instruction was supported by sufficient evidence and so the trial judges did not abuse their discretion by deciding to give the instruction to the juries.

C.      This court should not overrule precedent and eliminate this instruction

Finally, Fergen and Appukuttan ask us to overrule existing precedent and abandon the use of this jury instruction altogether. To abandon established precedent, there must be "'a clear showing that an established rule is incorrect and harmful.'" *State v. Devin*, 158 Wn.2d 157, 168, 142 P.3d 599 (2006) (internal quotation marks omitted) (quoting *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 147, 94 P.3d 930 (2004)). Fergen and Appukuttan rely on multiple policy arguments to demonstrate that the instruction should be abandoned.

They argue this supplemental instruction is unnecessary since the jury is already given an instruction on the basic standard of care and giving an additional instruction creates a risk of confusion regarding the standard of care to apply in the case. They claim that leaving it up to the discretion of a judge whether to give the instruction results in "unpredictability, inconsistency, and one-sidedness." Reply Br. of Appellant (Appukuttan) at 8. And finally, they argue this instruction results in an unfair advantage to defendants in medical malpractice cases. Fergen and Appukuttan argue that giving this instruction is tantamount to a directed verdict because every medical case necessarily involves judgment, as is shown by the fact that in reported

decisions when the instruction is given, a defense verdict results. *Id*. However, none of these arguments persuade us that the current system and precedent is sufficiently incorrect and harmful to justify eliminating this instruction.

Similarly, the dissent asserts that the instruction is incorrect and harmful because it supplements neutral instructions with an instruction that contains one side's theory of the case. Dissent at 7-8. Yet, instructions that inform the jury of a party's theory of the case are not necessarily harmful or incorrect. If a party's theory of the case is supported by substantial evidence, he or she is entitled to have the court instruct the jury on it. *Barrett v. Lucky Seven Saloon, Inc.*, 152 Wn.2d 259, 266-67, 96 P.3d 386 (2004).

The dissent contends that the instruction "misdirect[s] a jury's consideration of a plaintiff's claim" and confuses the jury. Dissent at 9. According to the dissent, the instruction focuses the jury on the physician's choice rather than the plaintiff's claim that the physician failed to take the proper steps before making the choice. *Id.* at 8-9. In addition, the dissent asserts that the instruction could make the jury believe it does not need to resolve factual issues regarding the standard of care. *Id.* at 10.

We have often examined this system and repeatedly affirmed the utility of having additional instructions, including the exercise of judgment instruction, supplement the basic standard of care instruction in medical malpractice cases. Properly given and worded, this instruction does not misdirect the jury and is not

17

confusing; it helps juries understand the complexity of the legal standard they are being asked to apply. *See Christensen*, 123 Wn.2d at 247-49; *Watson*, 107 Wn.2d at 167; *Miller* III, 91 Wn.2d at 161; *Gerard*, 86 Wn. App. at 388-89; *Thomas*, 65 Wn. App. at 263-64. In contrast to the dissent's assertion, the language of the instruction alerts jurors that they must resolve factual issues regarding the standard of care. The instruction requires the jury to find that in arriving at the diagnoses or treatment the physician exercised reasonable care and skill within the requisite standard of care. *See Watson*, 107 Wn.2d at 165.

Each case before the court presents different facts, and it is impossible to have one formula fit all unique situations, particularly in medical malpractice cases where it is important to remember that the inexactness of medicine is not a basis for legal liability. This instruction is one of the tools in a judge's toolbox for him or her to use to ensure this critical element is understood. *Miller* I, 11 Wn. App. at 279-80; *Miller* III, 91 Wn.2d at 159; *Watson*, 107 Wn.2d at 161-67; *Christensen*, 123 Wn.2d at 247-50; *Vasquez*, 46 Wn. App. at 487-90. A certain measure of uncertainty is inherent in this system, but that is the price paid to have an individualized balance of instructions for each set of facts.

Elaborating instructions are commonly used in negligence law and are helpful for lay jurors to understand the complexities of a malpractice case. The exercise of judgment instruction reminds the jury that medicine is an inexact science where

professional judgment may reasonably differ as to what constitutes proper treatment. *Watson*, 107 Wn.2d at 167; *Gerard*, 86 Wn. App. at 388-89. It will not be applied in every case but should remain a tool for a judge to use when he or she decides it is appropriate. Some of the foregoing policy concerns might have some merit, but our case law has addressed and rejected the same issues and arguments; it has repeatedly affirmed the use of these supplemental instructions. The court will not overrule precedent unless it determines it to be incorrect and harmful, which petitioners have not proved.

## V.    CONCLUSION

We affirm the Court of Appeals in *Fergen* and the trial court in *Appukuttan*. We hold the exercise of judgment instruction is a proper statement of Washington law. We hold that it is not limited to circumstances in which a physician proves he or she consciously selected between competing diagnoses. The instruction is discretionary for the trial judge when he or she determines sufficient evidence has been presented that a physician exercised judgment in making a diagnostic or treatment choice. Neither trial judge abused their discretion in these cases by giving the instruction. We affirm both cases.

Fairhurst, J.

WE CONCUR:

Madsen, C.J.

Owens, J.

P.T.    Gordon McCloud, J.

No. 88819-1

STEPHENS, J. (dissenting)—A claim of medical malpractice sounds in negligence. The plaintiff must prove the health care provider failed to exercise the "care, skill, and learning expected of a reasonably prudent health care provider." RCW 7.70.040(1). Instructing the jury that a physician is not liable for exercising judgment in choosing among alternative courses of treatment or diagnoses adds nothing to the explication of this burden. As the majority notes, "'The exercise of professional judgment is an inherent part of the care and skill involved in the practice of medicine.'" Majority at 12 (quoting *Miller v. Kennedy*, 91 Wn.2d 155, 160, 588 P.2d 734 (1978) (*Miller* III)). The instruction thus tells the jury no more than to excuse from liability a doctor who exercises reasonable care.

Courts have long recognized that giving a supplemental instruction on the exercise of judgment is unnecessary. And, the instruction has been criticized as slanted, argumentative and confusing to jurors. The majority acknowledges courts are not *bound* to give the instruction, as its absence does not preclude the defense from arguing its theory of the case. *See* majority at 14 & n.4. But, the majority

offers no guidance for trial judges to decide when to give the instruction, suggesting that "even when appropriate it is not always required." *Id.* at 14. This case presents our first clear chance to end the confusion and unfairness engendered by the exercise of judgment instruction. We should take this opportunity to join a growing number of courts across the nation and jettison this problematic instruction. I respectfully dissent.

## ANALYSIS

The majority's approval of the exercise of judgment instructions given in these cases rests on the belief that it "is supported in Washington law and has not been shown to be incorrect or harmful." Majority at 3. I disagree with both of these propositions. This type of instruction has long been criticized, including by this court, and efforts to temper its language have not remedied its core deficiencies. I will first address the history of the exercise of judgment instruction, which demonstrates that it is argumentative and confusing, and then turn to why this court should exercise its authority to reject it.

*The "Exercise of Judgment" Instruction Is Rooted in the Discredited "Error in Judgment" Instruction and Has Not Been Broadly Endorsed in Washington*

The exercise of judgment instruction is a relic of a discredited theory of liability, one that sought to hold a doctor to a lesser duty than any other person. It is a refinement of the "error in judgment" instruction, which required a jury to consider whether a health care provider exercised judgment in "good faith." *Dinner v. Thorpe*, 54 Wn.2d 90, 97-98, 338 P.2d 137 (1959). In our earliest

review of the error in judgment instruction, we rejected the good faith language, finding it misleading in suggesting good faith could absolve a physician of liability, irrespective of negligence. *Id.* at 98.

We considered a different iteration of the error in judgment instruction, minus the good faith language, in *Samuelson v. Freeman*, 75 Wn.2d 894, 454 P.2d 406 (1969). The instruction advised the jury that "if, having properly informed himself [of a patient's condition], [the physician] reache[d] a wrong conclusion, he is not liable for errors in judgment." *Id.* at 896. We did not rule on whether the instruction standing alone was an incorrect statement of law; instead, we held that when given alongside several other instructions "on the subject of the standards of care and skill required of medical practitioners," *id.* at 896, taken as a whole the instructions were "argumentative," "overemphasized the physician's immunities," and "markedly diminished his responsibilities." *Id.* at 897. Ordering a new trial, we cautioned against giving supplemental instructions that so emphasized one party's position over the other's as to be "palpably unfair." *Id.* We noted this problem was unlikely to recur on remand in light of newly published pattern instructions that defined the standard of care "with fairness and reasonable brevity." *Id.* Significantly, the pattern instructions at the time did not include an error of judgment instruction, which was added in 1990. 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL: 1994 POCKET PART 105.08 cmt. at 106-08 (3d ed. 1989) (WPI) (explaining that while the main volume

acknowledges the existence of the instruction but offers no recommended language, the committee in the 1990 pocket part first offered pattern language).[1]

We returned to the error in judgment instruction in *Miller* III, 91 Wn.2d 155.[2] There we considered language instructing the jury that "a physician is not liable for an honest error of judgment where he or she exercised the requisite degree of care and skill in arriving at the judgment." *Id.* at 160. We observed that "[c]ertainly Dr. Kennedy was called upon to exercise his professional judgment in performing the delicate surgery of a kidney biopsy" and held the trial court did not err in giving the instruction. *Id.* We later disapproved of the "honest error" language to the extent that it "'muddle[d] the jury's understanding of the burden imposed upon a plaintiff in a malpractice action'" by suggesting the plaintiff must prove a "''dishonest mistake'''" or "''bad faith error.'''" *Watson v. Hockett*, 107 Wn.2d 158, 165, 727 P.2d 669 (1986) (quoting *Teh Len Chu v. Fairfax Emergency Med. Assocs.*, 223 Va. 383, 386, 290 S.E.2d 820 (1982)). Absent the offending language, we noted, such an instruction could be given in a proper case, but it must

---

[1] Today the "error of judgment" instruction appears as WPI 105.08, *see* 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL (6th ed. 2012). The pattern instructions do not carry the force or weight of decisional law and indeed are frequently amended or revised in response to decisional law or statute. *See id.* cmt. at 612 (explaining that the error of judgment instruction was reformulated in response to decisional law); *see also State v. Austin*, 59 Wn. App. 186, 194 n.4, 796 P.2d 746 (1990) (encouraging the committee on jury instructions to adopt language reflecting a change in a governing statute).

[2] *Miller* I is the Court of Appeals decision *Miller v. Kennedy*, 11 Wn. App. 272, 522 P.2d 852 (1974), reversing the trial court's decision. *Miller* II is our per curiam affirmation of the Court of Appeals decision, *Miller v. Kennedy*, 85 Wn.2d 151, 530 P.3d 334 (1975). *Miller* III is our review of the trial court's decision following the remand from the Court of Appeals.

be given with caution. *Id.* In particular, it should not be given unless the evidence shows the physician exercised reasonable care and was in fact "confronted with a choice among competing therapeutic techniques or among medical diagnoses." *Id.*

In *Christensen v. Munsen*, 123 Wn.2d 234, 249, 867 P.2d 626 (1994), we rejected a claim that the error of judgment instruction constituted a comment on the evidence but again reiterated that the instruction applies only in the limited circumstance when a health care provider chooses among acceptable alternatives. We also noted that it "supplements the standard of care and can only be given with a proper standard of care instruction." *Id.*

As this brief overview makes clear, our precedent can hardly be described as a ringing endorsement of the error or exercise of judgment instruction. In just a handful of cases, we have examined the most argumentative aspects of earlier versions of the instruction, with the result that the instruction has been tweaked, whittled, revised, and prodded into its current form. We have not examined any version of this instruction in 20 years and have never directly considered the "exercise of judgment" instruction at issue in these cases. While we noted the seeming acceptance of the "error in judgment principle" in 1986, *Watson*, 107 Wn.2d at 165, we have not had an opportunity to consider cases since then that show a trend toward rejecting it. *See, e.g., Pleasants v. Alliance Corp.*, 209 W. Va. 39, 543 S.E.2d 320, 331 (2000) (reversing West Virginia precedent and collecting

cases from other states to show that "courts increasingly are veering away from the use of these instructions based on the potential for jury confusion").[3]

I share the concern expressed by our Court of Appeals, which in 2001 commented:

> If the Supreme Court chooses to revisit the line of cases that bind us, it seems fair to add that we see no independent reason for giving a separate "error of judgment" instruction. It appears to us that the standard instructions are adequate to allow argument on the topic without undue emphasis or risk of confusion. In this sense, the "error of judgment" instruction adds little while risking unnecessary confusion.

*Ezell v. Hutson*, 105 Wn. App. 485, 491, 20 P.3d 975 (2001); *see also Fergen v. Sestero*, 174 Wn. App. 393, 398, 298 P.3d 782 (2013) (deferring to this court "the task of redefining when the instruction should apply, if at all"). For the reasons more fully explained below, we should take this opportunity to disapprove of giving a supplemental exercise of judgment instruction in medical negligence cases.

*The Exercise of Judgment Instruction Is Confusing, Unfair, and Inconsistent with the Modern Practice of Giving Only Basic, Neutral Instructions*

Jurors have a difficult job. We expect them to understand and apply legal principles served up to them "in a brief formal incantation." Joseph H. King, Jr., *Reconciling The Exercise of Judgment and the Objective Standard of Care in Medical Malpractice*, 52 OKLA. L. REV. 49, 64 (1999). "The plight of jurors is

---

[3] The instruction at issue in *Pleasants* included the term "honest error," and many of the cases cited in the opinion rejected instructions with the type of "good faith" language this court has criticized. *See* 543 S.E.2d at 329-31 & n.27.

even worse than one writer's analogy to a law school class in which the entire course consisted of a verbatim reading of the rules followed by an examination. As another writer states, '[i]t is all too easy for those of us who are lawyers or judges to forget what the world looked like before we entered law school.'" *Id.* at 64-65 (alteration in original) (footnotes omitted). Appreciating the difficulties jurors face, the art of instructing the jury should focus on identifying a basic, neutral set of instructions.

Supplemental instructions generally cut against this goal. In many areas of the law this court has rejected instructions—some quoting verbatim from court opinions—that emphasized one party's point of view. *See, e.g., Turner v. City of Tacoma*, 72 Wn.2d 1029, 1034, 435 P.2d 927 (1967) (describing parties' competing supplemental instructions as "slanted" and stating "[t]hat we may have used certain language in an opinion does not mean that it can be properly incorporated into a jury instruction"). We have long ascribed to the philosophy that when it comes to instructing a jury, less is more. *Laudermilk v. Carpenter*, 78 Wn.2d 92, 100, 457 P.2d 1004 (1969). As the court in *Laudermilk* explained:

> It has, for some years, been the policy of our Washington system of jurisprudence, in regard to the instruction of juries, to avoid instructions which emphasize certain aspects of the case and which might subject the trial judge to the charge of commenting on the evidence, and also, to avoid slanted instructions, formula instructions, or any instruction other than those which enunciate the basic and essential elements of the legal rules necessary for a jury to reach a verdict. Under this theory, counsel has been free, and, indeed, has the responsibility, to argue to the jury, the refinements of these rules within the factual framework of his case. Detailed instructions, such as those proposed here, though once common,

are now deemed to be instructions which "point up," "underline," or "buttress" portions of counsel's argument.

*Id.* at 100-01.

In every case to have considered an error of judgment instruction, this court has recognized this type of instruction serves to emphasize the defendant's theory of the case. It has been variously described as unnecessary, misleading, confusing, and argumentative. At best, the instruction is unhelpful, simply restating the standard of care instruction, but from the defendant's perspective.[4] At worst, it misdirects a jury away from the question of reasonable care to focus attention on whether the health care provider made a choice. It tempts the jury into viewing professional or clinical judgment as a free-standing consideration in the question before it, akin to an affirmative defense.[5] And insofar as "[t]he exercise of professional judgment is an inherent part of the care and skill involved in the practice of medicine," *Miller*, 91 Wn.2d at 160, the instruction may lead juries to conclude a defensible choice is synonymous with a nonnegligent choice.

---

[4] We have recognized that the instruction is not necessary for a defendant in a civil malpractice case to argue a defense theory; it is at most a supplementary instruction, and a trial judge does not commit error by refusing to give it. *See Seattle W. Indus., Inc. v. David A. Mowat Co.*, 110 Wn.2d 1, 9, 750 P.2d 245 (1988); 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 105.07 cmt. at 611 (6th ed. 2012). The majority acknowledges this, majority at 14 n.4, but at the same time suggests a defendant may be entitled to the exercise of judgment instruction, *id.* at 17. The problem is, the majority never tells us when this will be the case.

[5] Underscoring this proposition is amici Washington State Medical Association (WSMA) and Washington State Hospital Association's (WSHA) insistence that the exercise of judgment is a "defense." Br. of Amici Curiae WSMA & WSHA at 14. An affirmative defense admits the elements of the claim but offers an excuse or justification for the act.

The cases before us demonstrate how this instruction can misdirect a jury's consideration of a plaintiff's claim. The claims in these cases were not premised on negligence in choosing diagnosis (or treatment) A over diagnosis (or treatment) B. The plaintiffs claimed the physicians fell below a reasonable standard of care in failing to do steps 1, 2, 3, 4, and 5 *before* choosing A over B. But the exercise of judgment instruction bolstered Dr. Sestero's argument that he was not negligent in choosing to disregard a diagnosis of cancer and Appukuttan's medical team's argument that it was not negligent in choosing to rule out compartment syndrome. For example, in closing argument, Dr. Sestero's counsel told the jury, "I want to talk to you a little bit about standard of care and judgment. . . . [Plaintiff's experts] are willing to come and criticize Dr. Sestero for not considering this nub in the ankle to be a cancer." 12 Verbatim Report of Proceedings (VRP) (Fergen) at 2197-98. Counsel discussed the exercise of judgment instruction:

> And that gets to this issue of judgment, the judgment instruction, I believe its Instruction Number 18 that Judge Sypolt has given you. The law is that a physician is not liable for an error in judgment in making a diagnosis if, in arriving at that judgment, he followed an appropriate standard of care. So in the judgments that Dr. Sestero did, you have to reflect on this: Did he blow the patient off according to the contemporaneous record? Not at all.

*Id.* at 2203.

On rebuttal, Fergen's counsel attempted to push back against this focus on a choice between diagnoses:

> I'm not asking you to hold Dr. Sestero accountable for discovering Ewing sarcoma. That's never been a part of this case, and they have tried very

-9-

> hard to leave you with that impression. We're not saying that. We're just saying he should have done more than he did.

*Id.* at 2217. In the end, the jury was left to sort out the parties' disagreement by reading the instructions, which included a particular instruction focusing on the physician's selection of "one of two or more alternative diagnoses." Clerk's Papers at 3198 (Instruction 18).

Similarly, in Appukuttan's case, defense counsel emphasized the exercise of judgment instruction, arguing:

> This instruction number 10, I want you to review that too as well because there are two different diagnoses. There was all over the records you'll see the diagnosis of hematoma; it's been talked about at length. And what this says, if there are two reasonable ways to pursue something, the judge has instructed you, it's in the instructions, a physician is not liable for pursuing one of those or a treatment option, even if you believe in hindsight that the patient had compartment syndrome at the time, as long as it is reasonable, then he is not liable.

VRP (Appukuttan) (Dec. 3, 2012) at 72. To be clear, I do not fault counsel for making arguments that focused on the defense theory of the case. It was their absolute right, indeed obligation, to do so. But the slanted focus of the exercise of judgment instruction gave the defense theory an unfair advantage, essentially stamping it with the judge's approval.

In addition to being slanted and argumentative, the exercise of judgment instruction potentially confuses the jury with respect to the factual issues it must resolve. Based on the instruction, a jury could believe it does not need to resolve disputes over the standard of care so long as the evidence shows the health care providers chose to follow one standard over another. After all, there is no division

-10-

in the presentation of the evidence or in the closing arguments between disputes over the standard of care and questions of professional judgment. So, if the experts disagree over what the health care provider should have done, and the evidence shows the provider chose option A over option B, the instruction suggests there is no liability.

Of course, we can never know exactly how the exercise of judgment instruction affected deliberations in a particular case. The jury's thought process inheres in its verdict. But, it is important to recognize the risk of confusion this instruction presents in any medical negligence case, including these. The majority cannot elucidate a workable rule for a trial judge to decide when the risk of giving this instruction is too great. The majority acknowledges that we have said the instruction must be given "'with caution.'" Majority at 10 (quoting *Watson*, 107 Wn.2d at 165). It explains that this court has attempted to limit the introduction of the instruction to "situations where the doctor uses judgment to choose between alternative treatments or diagnoses." *Id.* (citing *Miller* III, 91 Wn.2d at 160). But, at the same time the majority characterizes this requirement as one that must be broadly construed, suggesting it is "a low bar that must be satisfied for the court to hold that a physician made a choice between treatments or diagnoses." *Id.* at 12-13. Nothing more must be shown than that the health care provider was engaged in an "'exercise of professional judgment' in treatment or diagnosis." *Id.* at 14 (quoting *Miller* III, 91 Wn.2d at 160). The *Miller* III court acknowledged that the exercise of professional judgment is simply a physician practicing medicine. 91

Wn.2d at 160 ("The exercise of professional judgment is an inherent part of the care and skill involved in the practice of medicine."). If there is a backstop in the majority opinion to giving this instruction, I cannot divine it.[6] In fairness to the majority, its inability to articulate a workable rule is merely symptomatic of the basic infirmity of the exercise of judgment instruction. Perhaps the only saving grace for trial judges is the standard of review. While we have not found an abuse of discretion where a trial court gave the instruction, neither have we found reversible error where the trial court refused to do so. *See Watson*, 107 Wn.2d at 167. I believe the only way to achieve consistency is to disapprove of this instruction entirely.

### The Court Should Categorically Disapprove of the Exercise of Judgment Instruction

Preliminarily, I am not convinced that our authority to reject the giving of an error or exercise of judgment instruction depends on meeting the "incorrect and harmful" test. *In re Right to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970) (announcing the test for overruling stare decisis). Standards for instructing juries evolve over time, and our precedent cannot be characterized as broadly endorsing this instruction. No one contends that the exercise of judgment instruction is a misstatement of law or that the law of medical negligence itself

---

[6] The majority suggests the instruction would be inappropriate in a challenge that focuses on the inadequate skills of the physician. Majority at 14. If this narrow subset of cases is the only category in which the instruction would not apply, I still cannot agree that the instruction can be given in a manner faithful to our directive that it be applied with caution.

must be changed. Rather, we are asked to consider the risks attendant to this instruction and to provide guidance to lower courts on how to fairly instruct juries in medical negligence cases.

Even if we must overrule precedent in order to reject this instruction, it is not difficult to meet the incorrect and harmful test here. This court in *Stranger Creek* emphasized that precedent "is not an absolute impediment to change" and that "stability should not be confused with perpetuity." 77 Wn.2d at 653. As explained, the exercise of judgment instruction is slanted, argumentative, and confusing to juries. Our precedent has consisted mainly of partial rejections of the worst language in earlier versions of the instruction. Since our last consideration of the instruction 20 years ago, several courts have reconsidered its value and have veered away from its use. Additionally, our legislature has framed the elements of medical negligence in RCW 7.70.030 and .040, providing even stronger reason for following the modern practice of eschewing supplemental instructions in favor of simply outlining the statutory elements.[7] To the extent that prior cases have refused to find error in either the giving or the refusal to give an exercise of judgment instruction, the existing precedent merely perpetuates an inconsistent application of the law at the trial court level and provides absolutely no guidance.

---

[7] I do not agree with Appukuttan's suggestion that RCW 7.70.030 and .040 "preempt" WPI 105.08 or that the instruction is inconsistent with the statute. *See* Br. of Appellant (Appukuttan) at 11-18. My point is simply that the codification of the elements of a medical negligence claim reinforces the value of limiting jury instructions to those that provide the legal framework for the jury's deliberations. *See Laudermilk*, 78 Wn.2d at 100 (cautioning against giving instructions "other than those which enunciate the basic and essential elements of the legal rules necessary for a jury to reach a verdict").

Our precedent is harmful for many of the same reasons, but also for the fact that is has resulted in the creation of a pattern instruction that we should expect will be requested in most medical negligence cases. Our admonition that the instruction should be given with caution has proved to be futile and will be even less effective in light of the "low bar" set by the majority. Majority at 12-13. Trial judges will rightly complain that while we continue to wring our hands about the risks of giving an exercise of judgment instruction, we offer little help in deciding when it should and should not be given.

Finally, I believe it shows a harmful effect of this type of instruction that it serves to bolster one party's theory of the case. We are told that the instruction is almost always associated with a defense verdict. *See* Reply Br. of Appellant (Appukuttan) at 10 (arguing the instruction "is tantamount to directing a defense verdict"). While we do not have the benefit of a scientific study measuring the effects of the error of judgment instruction on deliberating juries, we should consider the concerns raised in the reported cases in weighing the costs and benefits of continuing to allow this instruction. I believe the time has come to recognize that the risks of misdirecting or confusing the jury outweigh any possible benefit to giving this slanted, argumentative instruction. I would be equally dubious of any instruction that overemphasized the plaintiff's point of view, by "'point[ing] up,' 'underlin[ing],' or 'buttress[ing]' portions of counsel's argument." *Laudermilk*, 78 Wn.2d at 101. We should send the clear message to trial courts that jury instructions should enunciate the basic legal elements of

medical malpractice and that WPI 105.08 is not an appropriate "supplement" to the instructions.

*The Erroneous Instruction in These Cases Requires Reversal*

The remaining question is whether the instructions given in these cases created a sufficient risk of prejudice as to require reversal. Fergen and Appukuttan argue for reversal on the ground that the instructions were legally erroneous and unsupported by the evidence. Pet'rs' Suppl. Br. (Fergen) at 19-20; Br. of Appellant (Appukuttan) at 24. Respondents' counsel in *Fergen* notes that the prejudice recognized in prior versions of the instruction that used terms such as "honest error" is not present in the current language. Br. of Resp'ts (Fergen) at 42-43.

Courts that have disapproved of use of an exercise of judgment instruction have separately examined whether giving the instruction in the particular case resulted in reversible error. *See Pleasants*, 543 S.E.2d at 330-32 & n.27 (finding error harmless in light of other instructions correctly stating the law; collecting similar cases); *Yates v. Univ. of W. Va. Bd. of Trs.*, 209 W. Va. 487, 549 S.E.2d 681, 691-92 & n.19 (2001) (finding reversible error based on reasonable probability the instruction influenced jury's verdict; collecting similar cases). The question is not particularly well developed in this case, as the briefing focuses on the merits of the exercise of judgment instruction itself. Certainly, the erroneous instruction did not stand in isolation; it supplemented proper standard of care

instructions. Thus, if the test is simply whether the instructions as a whole properly advised the jury of the relevant law, they did.

On the other hand, as in the *Yates* case, there is a reasonable probability that the exercise of judgment instruction influenced the jury's verdict insofar as it incorrectly focused attention away from the general negligence standard, and its effect was amplified by several references to it in closing argument. *Cf. Yates*, 549 S.E.2d at 691 & n.18. However, it did not contain the loaded phrase "'reasonable and honest mistake of judgment'" that marred the West Virginia instruction. *Id.* at 690.

While the question of prejudice presents a close call in these cases, I believe it is unrealistic to conclude that the error of judgment instruction did not influence the jury verdicts. Looking at the instructions as a whole is not itself a sufficient way to measure prejudice when we are dealing with a *supplemental* instruction. Such instructions do not undermine the proper statements of the law in the basic instructions, but they overemphasize one party's point of view. Given the risks inherent in this slanted, argumentative instruction, it is reasonably probable that the instruction confused the jury as to the nature of the plaintiffs' claims as well as their burden in proving negligence. As described above, it clearly bolstered defense counsels' arguments in closing that focused on the different possible diagnoses. While we can never know if the jury would have reached the same verdict in the absence of the erroneous instruction, neither can we say it did not

play a significant role in these trials. Accordingly, I believe giving the instruction constituted reversible error and would remand for new trials.

## CONCLUSION

We have long recognized the potential for mischief in the exercise of judgment instruction, but our approach to date has been merely to soften its language. It remains problematic and continues to evade our admonition that it be used "with caution." We should join those courts that have recognized the risks of this instruction outweigh any benefits, and disapprove of once and for all the giving of this instruction. I respectfully dissent.

_Stephens, J._

_Wiggins, J._

_González, J._