
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| VICTOR BORST, a single individual, | ) | |
| | ) | No. 36469-1-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICK S. LYNCH, JR. and JANE | ) | UNPUBLISHED OPINION |
| DOE LYNCH, husband and wife and the | ) | |
| marital community thereof, and | ) | |
| NORTHWEST ORTHOPAEDIC | ) | |
| SPECIALISTS, P.S., a Washington | ) | |
| Corporation, | ) | |
| | ) | |
| Respondent. | ) | |

STAAB, J. — Victor Borst sued Dr. Patrick Lynch for medical negligence after an

MRI revealed a torn Achilles tendon following knee replacement surgery. The case went

to trial. Over Mr. Borst's objections, the jury was given standard civil jury instructions

on the general standard of care and supplemental instructions that further defined the

standard of care. The jury returned a verdict for Dr. Lynch. On appeal, Mr. Borst

challenges two of the court's jury instructions. First, he argues that the standard

instruction in 6 *Washington Practice*: *Washington Pattern Jury Instructions: Civil*

105.03, at 612 (7th ed. 2019) (WPI) is an incorrect statement of the law and should have

been altered. In addition, he contends that the court abused its discretion and commented

on the evidence by including the "no guarantee" jury instruction. We disagree and affirm the jury's verdict.

## FACTS

Dr. Patrick Lynch is an orthopedic surgeon in Spokane. Victor Borst was his patient for several years, seeking treatment for ongoing knee issues. In September 2011, Dr. Lynch performed a total knee replacement of Mr. Borst's right knee. Following surgery, Mr. Borst adhered to an intensive post-op physical therapy regimen.

Approximately two months after surgery, Mr. Borst told one of his physical therapists that he had been experiencing pain in his right Achilles tendon since the surgery but that it had lessened in the last week. This was the first documentation of any problems with Mr. Borst's Achilles tendon. Over the next several weeks, Mr. Borst complained of pain in his Achilles tendon in varying degrees. One of his physical therapists, John McKinnon, concluded in his treatment report that the pain in Mr. Borst's Achilles tendon was likely due to long-term knee flexion contracture prior to the knee surgery.

On December 1, three months after surgery, Mr. Borst told Dr. Lynch that he had been experiencing Achilles pain since the surgery. Dr. Lynch made a note that the Achilles might have been torn due to the foot's position during surgery. This notation became the impetus of Mr. Borst's lawsuit against Dr. Lynch. A subsequent MRI showed Achilles tendinosis with a small tear.

At trial, Mr. Borst testified that he felt significant pain in his Achilles immediately after surgery. Mr. Borst called a medical expert who testified that knee and leg placement during surgery was critical: the surgeon must avoid placing the foot in a dorsal flexion position to prevent stretching the achilles tendon. The expert further testified that Dr. Lynch indicated in his notes that he had placed Mr. Borst's foot in a dorsal flexion position during surgery. The expert opined that this positioning fell below the standard of care for surgeons and was most likely the cause of the injury to Mr. Borst's Achilles tendon. The plaintiff's medical expert also testified that Dr. Lynch exacerbated the injury with his ongoing failure to exercise appropriate care following the surgery.

Dr. Lynch called two of his own medical experts, who testified that the knee replacement surgery did not cause Mr. Borst's Achilles injury. Both experts testified that Dr. Lynch used proper legal and foot placement during the surgery, and there was no risk of tearing because the tendon is relaxed throughout the surgery. One expert also testified that his review of Mr. Borst's injury suggested a long-standing injury to the Achilles that was present before surgery and aggravated by Mr. Borst's increased mobility and flexibility following surgery.

The parties submitted proposed jury instructions. Mr. Borst demurred to jury instruction number 10, which mirrored WPI 105.03. Mr. Borst argued that the instruction misrepresented the law and his burden of proof. Mr. Borst also objected to jury instruction number 13, commonly referred to as the "no guarantee" instruction, WPI

105.07, because the evidence did not support the instruction. Its inclusion would therefore amount to an unconstitutional comment on the evidence. The court overruled these objections and provided the instructions.

The jury returned a verdict for Dr. Lynch. Following denial of a motion for a new trial, Mr. Borst appealed.

ANALYSIS

1. Is WPI 105.03 a misstatement of the law?

Mr. Borst assigns error to two of the trial court's jury instructions. Specifically, he argues that jury instruction number 10, which mirrors WPI 105.03, is a misstatement of the law. "Legal errors in jury instructions are reviewed de novo." *Fergen v. Sestero*, 182 Wn.2d 794, 803, 346 P.3d 708 (2015).

Mr. Borst contends that WPI 105.3 is an inaccurate statement of the law because it requires him to prove that Dr. Lynch failed to follow the "applicable standard of care" without defining that term. The challenged instruction reads:

> In connection with the Plaintiff's claims of injury resulting from negligence, the Plaintiff has the burden of proving each of the following propositions:
>
> First, that the Defendant failed to follow the *applicable standard of care* and was therefore negligent;
>
> Second, that the Plaintiff was injured;
>
> Third, that the negligence of the Defendant was a proximate cause of the injury to the Plaintiff.

4

> If you find from your consideration of all of the evidence that each of these propositions has been proved, your verdict should be for the Plaintiff. On the other hand, if any of these propositions has not been proved, your verdict should be for the Defendants.

Clerk's Papers (CP) at 164 (emphasis added).

Mr. Borst contends that the law, RCW 7.70.040, requires him to prove that Dr. Lynch failed to exercise the care, skill, and learning expected of a reasonably prudent health care provider, not the applicable standard of care. Br. of Appellant at 15-16. We disagree with this argument.

The basic elements of any negligence claim include duty, breach, causation, and harm. *Eelbode v. Chec Medical Centers, Inc.*, 97 Wn. App. 462, 984 P.2d 436 (1999). Medical negligence causes of action are authorized by chapter 7.70 RCW. For purposes of this case, RCW 7.70.030(1) requires Mr. Borst to prove that his "injury resulted from the failure of a health care provider to follow the accepted standard of care." The "standard of care" is further defined in RCW 7.70.040(1), which requires a plaintiff to prove causation by showing that the "health care provider 'failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances.'" *Housel v. James*, 141 Wn. App. 748, 758, 172 P.3d 712 (2007).

In this case, the elements of Mr. Borst's negligence claim, as provided in RCW 7.70.030, were set out in jury instruction number 10. The details, as provided in RCW 7.70.040, were set out in jury instruction number 9, which read:

> A physician who holds himself out as a specialist in orthopedic surgery has a duty to exercise the degree of skill, care, and learning expected of a reasonably prudent orthopedic surgeon in the State of Washington acting in the same or similar circumstances at the time of the care or treatment in question. *Failure to exercise such skill, care, and learning constitutes a breach of the standard of care and is negligence.*

CP at 163 (emphasis added).

"Jury instructions are adequate if they are supported by substantial evidence, allow each party to argue its theories of the case, and, when read as a whole, properly inform the jury of the applicable law." *Housel*, 141 Wn. App. at 758. Here, jury instruction number 9, which mirrored WPI 105.02, adequately defined the applicable standard of care for a physician who holds himself out as a specialist in orthopedic surgery. When read as a whole, the instructions adequately informed the jury of the applicable law.

To the extent that Mr. Borst argues that the statute requires the judge, and not the jury, to establish the applicable standard of care, he fails to cite any authority to contradict significant precedent holding otherwise. *See Collins v. Juergens Chiropractic, PLLC*, 13 Wn. App. 2d 782, 793, 467 P.3d 126, *review denied*, 196 Wn.2d 1027, 476 P.3d 567 (2020) (Generally, a plaintiff must establish the applicable standard of care and proximate cause by medical expert testimony).

6

We hold that WPI 105.03 is not a misstatement of the law.

2. Did the trial court abuse its discretion by giving the "no guarantee" instruction?

Mr. Borst also contends that the trial court erred by giving jury instruction number 13, the "no guarantee" instruction, because the evidence did not support this instruction, and it constituted a comment on the evidence. A trial court's decision on whether to give a particular instruction is reviewed for abuse of discretion. *Fergen*, 182 Wn.2d at 802. "The propriety of a jury instruction is governed by the facts of the particular case." *Id*. at 803.

The trial court instructed the jury that "[a]n orthopedic surgeon does not guarantee the results of his care and treatment. A poor medical result is not, by itself, evidence of negligence." CP at 167. This is often referred to as the "no guarantee" instruction. It is used to supplement the standard of care instructions. *Watson v. Hockett*, 107 Wn.2d 158, 166, 727 P.2d 669 (1986). Similar to other supplemental instructions, it is proper when supported by the evidence. *Fergen*, 182 Wn.2d at 803.

Mr. Borst contends that the evidence did not support giving the "no guarantee" instruction because the parties in this case agreed that the knee surgery was successful. Instead, the issue at trial was whether, during this surgery, Dr. Lynch placed Mr. Borst's leg and foot in a position that caused his Achilles injury. Thus, there was no evidence to support a jury instruction that suggested an unexpected result from the surgery.

7

As Dr. Lynch points out, however, the surgery and physical therapy did have a poor medical result, i.e., an Achilles injury that may not have occurred but for the surgery. This unexpected result was not necessarily the result of negligence. Instead, as provided by the defense experts, the injury could have been a prior existing condition that was unexpectedly aggravated by the surgery and physical therapy. Consequently, the "no guarantee" instruction was supported by the evidence.

Mr. Borst also contends that since there was no evidence to support the "no guarantee" instruction, giving the instruction amounted to an improper comment on the evidence. He reasons that the only issue at trial was whether Dr. Lynch's placement of his foot during surgery caused his Achilles injury. If Dr. Lynch placed the foot and leg in one particular position, he violated the standard of care and caused the injury. By instructing the jury that there is no guaranteed result, the court is inferentially discounting plaintiff's theory of the case and thus, commenting on the evidence.

A similar argument was recently rejected by the Supreme Court in *Fergen* where the Court addressed the "exercise of judgment" supplemental instruction. The dissent in *Fergen* argued that this instruction should be discontinued in part because it tended to overemphasize certain aspects of a defendant's case, which might then subject the trial judge to a charge of commenting on the evidence. *Fergen*, 182 Wn.2d at 818 (Stephens, J., dissenting). The majority rejected this argument, noting that "instructions that inform the jury of a party's theory of the case are not necessarily harmful or incorrect. If a

8

party's theory of the case is supported by substantial evidence, he or she is entitled to have the court instruct the jury on it." *Id*. at 810.

Finally, Mr. Borst argues that, combined with the inaccurate statement of the law in jury instruction 10, the "no guarantee" instruction improperly delegated a legal question to the jury. Throughout this argument, as well as the argument above, Mr. Borst fails to mention, much less analyze, how jury instruction number 9, which provided details on the applicable standard of care, addresses any such concern. Because we have found that instruction number 10 was not a misstatement of the law, we likewise reject this argument.

Instruction number 10 was supported by the evidence and did not constitute an improper comment on the evidence. The trial court did not abuse its discretion by giving this instruction.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____         _____
Fearing, J.                                               Pennell, C.J.

9