300

[No. 53529-3-I.   Division One.   March 21, 2005.]

JODY FOX, *Appellant*, v. BENTON A. EVANS ET AL.,
*Respondents*.

*Ralph J. Brindley* (of *Luvera Barnett Brindley Beninger & Cunningham*), for appellant.

*Hal Thurston* (of *Zender Thurston, P.S.*), for respondents.

¶1 COLEMAN, J.— An injured person may not recover damages proximately caused by that person's unreasonable failure to mitigate. *Sutton v. Shufelberger*, 31 Wn. App. 579, 582, 643 P.2d 920 (1982). We affirm the trial court's decision to instruct the jury on mitigation because there was evidence presented from which the jury could conclude that the plaintiff's treatment decisions were unreasonable. There was expert testimony that the plaintiff would not accept a diagnosis of depression and that if she treated her depression, her condition would improve. Additionally, there was evidence presented that the plaintiff discontinued medication and therapy that had alleviated some of her symptoms and had improved her condition. This evidence was sufficient for the jury to conclude that the plaintiff acted unreasonably. Under these circumstances, it was not an abuse of discretion for the trial court to instruct the jury on a plaintiff's duty to mitigate.

## FACTS

¶2 Jody Fox sued Benton Evans for injuries allegedly suffered in an automobile accident occurring in August 1999. Evans admitted liability but contested the amount of damages owed to Fox. Evans alleged as an affirmative defense that Fox failed to mitigate her damages. The parties tried the issue of damages before a jury.

¶3 Fox's primary care physician, Dr. Ann Knowles, testified that Fox was depressed but that she refused to accept that diagnosis and did not want to try further antidepressants or therapy. Knowles testified that Fox

> may very well be of an underlying personality type that she may just never respond well to anti-depressants and some people have that. She has jumped through all the hoops. She has tried all of the different things and not done well with those treatment modalities, and for some people unfortunately that's just the way it is.

Report of Proceedings (RP) (Oct. 30, 2003) at 94. But Knowles also acknowledged that at trial, Fox was worse off than she was when she was taking certain medications and that Fox refused to try some treatments recommended to her.

¶4 Fox also presented the testimony of Dr. Ted Judd, a clinical neuropsychologist who treated Fox. Judd testified that Fox had the potential for moderate improvement by taking medication. He testified that Fox was reluctant to try further psychotherapy.

¶5 John Jordy, a mental health counselor, also testified about his treatment of Fox. Jordy's goal was to teach Fox how to better adapt to stressful situations. Jordy testified that after his first set of treatments with Fox, he saw a 30 percent reduction in her stress reactivity. He also testified that if she continued treatment, he anticipated an additional 50 percent improvement. Jordy testified that Fox was resistant to working on her depression. Jordy testified that Fox's reluctance to face her problems and treat them was a significant impediment to her recovery.

¶6 Fox also presented the testimony of Dr. John Perini, a clinical psychologist who treated her. Perini testified that Fox would have a better chance of recovery if she would treat her depression. Perini testified that he believed that antidepressants would be very beneficial to Fox "[i]f she would take and respond to them . . . ." RP (Oct. 29, 2003) at 82.

¶7 Dr. Mary Pepping performed a psychological assessment of Fox and reviewed Fox's medical records. Pepping testified that Fox was quite depressed and that Fox disagreed with that diagnosis. Pepping testified that if Fox had received treatment for her depression within a year of the accident, "some aspects of function would be better." RP (Oct. 29, 2003) at 145. She also testified that "there was room for a moderate amount of improvement in the depression, anxiety area and more minor improvements in the cognitive and managing personality style areas." RP (Oct. 29, 2003) at 147. Pepping did note that some people do not respond to medication but opined that patients should try as many medications as their doctors recommend.

¶8 Evans presented the testimony of Dr. Brooke Thorner, a board certified psychiatrist, who reviewed Fox's records and the deposition testimony of some witnesses. Thorner testified that Fox had effectively dealt with some of her symptoms with medication in the past. Thorner testified that Fox could work full-time. Thorner also testified that Fox could get back to 90 percent of her functioning if she would follow the treatment suggested by her doctors and therapists.

¶9 Evans also presented the testimony of Dr. Mary Reif, a board certified neurologist who examined Fox once and reviewed her records and the deposition testimony of experts. Reif testified that Fox did not have to be functionally impaired if she would take medication and treat her psychological issues. Reif testified that "given some treatment, I think that she would return to her baseline." RP (Nov. 4, 2003) at 97. Reif also testified that Fox is capable of working full time.

¶10 Evans also presented evidence from Fox's medical records showing that Fox's condition improved while she was taking certain medications.

¶11 At the close of testimony, Evans requested that the court give an instruction on failure to mitigate. Fox objected to the instruction, arguing that Evans failed to present adequate testimony to support the instruction. The trial court disagreed and gave the mitigation instruction to the jury.[1]

¶12 The jury returned a damages verdict for $500,000. The jury also found that Fox failed to mitigate her damages, which accounted for 22 percent of her damages. Fox filed a CR 50(b) motion, requesting that the trial court exclude the 22 percent allocation of fault to her and enter a judgment for the full amount of the jury verdict. The trial court denied Fox's motion and entered judgment against Evans for $390,000. Fox appeals.

## *ANALYSIS*

¶13 We review a trial court's decision to give a requested jury instruction for an abuse of discretion. *Holmes v. Wallace*, 84 Wn. App. 156, 163, 926 P.2d 339 (1996). "A person who is liable for an injury to another is not liable for any damages arising after the original injury that are proximately caused by failure of the injured person to exercise ordinary care to avoid or minimize such new or increased damages. . . . " 6 WASHINGTON PATTERN JURY IN-

---

[1] The instruction provided:

A person who is liable for an injury to another is not liable for any damages arising after the original injury or event that are proximately caused by failure of the injured person to exercise ordinary care to avoid or minimize such new or increased damages.

In determining whether, in the exercise of ordinary care, a person should have secured or submitted to medical treatment, as contended by defendant, you may consider the nature of the treatment, the probability of success of such treatment, the risk involved in such treatment, and all of the surrounding circumstances.

The defendant has the burden to prove plaintiff's failure to exercise ordinary care and the amount of damages, if any, that would have been minimized or avoided.

STRUCTIONS: CIVIL 33.02, at 359 (4th ed. 2002). A defendant requesting a failure to mitigate instruction must show that there were alternative treatment options available to the plaintiff and that the plaintiff acted unreasonably in deciding on treatment. *Hogland v. Klein*, 49 Wn.2d 216, 221, 298 P.2d 1099 (1956). This rule recognizes that an injured party has some duty to lessen his or her damages. *Hogland*, 49 Wn.2d at 221. Because the defendant caused the injury, however, it is the defendant's burden to show that the plaintiff acted unreasonably. *Hawkins v. Marshall*, 92 Wn. App. 38, 47, 962 P.2d 834 (1998).

> "A wide latitude of discretion must be allowed to the person who by another's wrong has been forced into a predicament where he is faced with a probability of injury or loss. Only the conduct of a reasonable man is required of him. *If a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather that the other is chosen.*"

*Hogland*, 49 Wn.2d at 221 (quoting CHARLES T. MCCORMICK, HANDBOOK ON THE LAW OF DAMAGES § 35, at 133 (1935)).

¶14 Fox relies primarily on this court's decision in *Cox v. Keg Restaurants U.S., Inc.*, 86 Wn. App. 239, 935 P.2d 1377 (1997) to argue that the trial court erred in giving the mitigation instruction. Fox focuses on language in *Cox* that suggests that a mitigation instruction is never proper when there is conflicting testimony.[2] Adopting this interpretation of *Cox* would virtually eliminate mitigation instructions in cases involving expert testimony. *Cox*, including the generalized statements regarding mitigation, must be read in light of the particular facts presented. In *Cox*, the only testimony presented regarding alternative treatments available to Cox was purely speculative. Cox suffered brain damage after he was assaulted by a drunken patron of The Keg Restaurant. Cox's doctor installed a shunt in Cox's

---

[2] Fox particularly focuses on the *Cox* court's statement that: "The issue should also not be submitted if the evidence shows that a proposed treatment might not be successful or if there is conflicting testimony as to the probability of a cure, because it is not unreasonable for a plaintiff to refuse treatment that offers only a possibility of relief." *Cox*, 86 Wn. App. at 244.

brain to help drain excess fluid. Cox's psychiatrist testified that a shunt removal or revision might have improved Cox's condition. But the psychiatrist also testified that he was not an expert and would defer to Cox's neurosurgeon. The neurosurgeon specifically testified that removing the shunt would aggravate another condition and that he would need strong evidence that the shunt was over-draining before he would recommend revision. The Keg also challenged Cox's decision not to take antidepressant medication or engage in physical therapy and his delay in seeking speech therapy. Cox's psychiatrist did not testify affirmatively that these decisions prolonged Cox's recovery. Rather, he testified that these treatments might have been beneficial for Cox. This testimony was purely speculative and did not raise a debatable issue for the jury.

¶15 In contrast, here, all of Fox's treatment providers testified that Fox suffered from depression and refused to accept that diagnosis. There was also testimony that Fox's refusal to treat her depression impeded her recovery. Additionally, there was evidence that Fox experienced significant improvement while taking certain medications and participating in therapy but that she discontinued these treatments. This distinguishes Fox's situation from that presented in *Cox*. Under these circumstances, it was proper for the trial court to instruct the jury on Fox's duty to mitigate her damages because the evidence presented raised an issue as to whether Fox's treatment decisions were reasonable.

¶16 Additionally, Fox argues that a mitigation instruction is not proper if there is conflicting testimony regarding the proposed treatment. Under Fox's formulation, a mitigation instruction would be proper only if all of the medical experts agreed that a certain treatment would have cured the patient's problem. As counsel for Fox acknowledged at oral argument, this would practically eliminate this type of instruction in cases involving medical testimony. The jury instruction should be given if the medical testimony allows the jury to find that a plaintiff's treatment decisions more likely than not adversely affected his or her recovery.

¶17 Here, several experts, including Fox's primary care physician, testified that Fox was depressed but refused to recognize her depression. The experts opined that Fox's refusal to recognize and treat her depression adversely affected her recovery. Additionally, there is medical evidence that Fox experienced significant improvement while taking certain medications but that she discontinued taking those medications. Because this testimony raises an issue as to whether Fox acted reasonably in refusing to undergo further psychotherapy and medication trials, the trial court did not abuse its discretion in giving the jury instruction.

¶18 Fox also argues that her somatoform personality profile rendered her an "egg shell plaintiff" and that her reluctance to treat psychological problems because of her personality could not be considered a failure to mitigate. The trial court gave the following instruction:

If you find that:

(1) before this occurrence, Jody Fox had a bodily or mental condition that was not causing pain or disability; and

(2) the condition made her more susceptible to injury than a person of normal health, then you should consider all the injuries and damages that were proximately caused by the occurrence, even though those injuries, due to the pre-existing condition, may have been greater than those that would have been incurred under the same circumstances by a person without that condition.

Fox did produce evidence that her preexisting personality profile made her more susceptible to depression and may have affected her treatment decisions. Evidence was also presented, however, that showed that Fox did have success with some medication and therapy. This allowed the jury to find that some of Fox's damages were caused by her preexisting personality and others were caused by her unreasonable treatment decisions. Thus, the trial court's instructions to the jury were proper.

¶19 Fox also argues that only the testimony of Fox's medical doctors is relevant in determining whether a fail-

ure to mitigate instruction was proper. While it is true that expert testimony is required to show that reasonable alternatives were available, Fox does not cite authority holding that only medical doctors may be experts in this regard. Here, a number of professionals who were not medical doctors treated Fox and the court allowed them to testify within their respective areas of expertise. This was acceptable expert testimony. Fox cites to *Colwell v. Holy Family Hospital*, 104 Wn. App. 606, 15 P.3d 210 (2001), to support her proposition that only a medical doctor's testimony may support a mitigation instruction. Fox's reliance, however, is misplaced, as *Colwell* is a medical malpractice case and discusses expert testimony regarding a physician's standard of care. This does not address the issue of expert testimony necessary to support a mitigation instruction.

¶20 Additionally, Fox argues that the expert testimony in this case was only speculative and did not provide a basis for the jury to allocate a portion of damages to her. To support a mitigation instruction, expert testimony must establish that the alternative treatment would more likely than not improve or cure the plaintiff's condition. The evidence must also allow a jury to segregate the damages. This testimony is required so that the jury does not base its decision on speculation.

¶21 Here, the experts testified with sufficient precision that treating the depression would improve Fox's condition. Jordy testified that Fox experienced a 30 percent improvement with his therapy and that he expected an additional 50 percent improvement if she continued with therapy. Reif and Thorner testified that Fox could work full time, instead of the four days a week she was presently working. Thorner testified that Fox could return to 90 percent of her functioning if she followed the recommendations of her treating physicians. Reif testified that if Fox would take medication and engage in therapy, she would not be functionally disabled. Additionally, Fox's medical records show that she had greatly improved symptoms when she was taking certain medications.

¶22 This evidence is sufficiently precise to allow the jury to determine that if Fox would have continued to take medications and participate in psychotherapy, she would more likely than not improve. This evidence is also sufficient to give the jury a basis upon which to segregate the damages attributable to Fox's unreasonable failure to mitigate her damages.

¶23 Fox also argues that the trial court erred in giving the mitigation instruction because Evans failed to show that Fox's actions were the proximate cause of some of her injuries. Experts testified, however, that if Fox would participate in psychotherapy and take antidepressants, her condition would improve. Additionally, there was evidence in the record that Fox's condition improved when she took certain medications and when she participated in therapy with Jordy. This evidence is sufficient to show that Fox's decisions regarding treatment were the proximate cause of a portion of her injuries.[3]

¶24 Affirmed.

Cox, C.J., and BECKER, J., concur.

Review denied at 156 Wn.2d 1017 (2006).

---

[3] Fox also argues that the trial court erred in denying her CR 50(b) motion. Because the mitigation instruction was proper, the trial court did not err in entering judgment in the amount of the verdict minus the portion of damages attributed to Fox.