IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STEPHEN HOSICK AND DEANNA HOSICK, a married couple, | No. 86636-2-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| COMMUNITY HEALTH NETWORK OF WASHINGTON, a Washington nonprofit corporation, | |
| Respondent. | |

HAZELRIGG, C.J. — Stephen and Deanna Hosick appeal the judgment that reduced their recovery based on a jury finding of comparative fault. They argue that Community Health Network of Washington wrongfully rescinded their health insurance policy and the jury should not have considered conduct regarding health care before the improper denial of coverage. Because the judge erroneously admitted certain evidence and the jury instructions misapplied RCW 4.22.070 and allowed apportionment of fault based on irrelevant conduct, we reverse and remand for correction of the judgment.

FACTS

Stephen Hosick, a type II diabetic for nearly 25 years, had experienced complications including insulin dependency since 2015. In 2017, he lost his left big toe to a diabetes-related infection and underwent additional procedures for

damage to his feet and hand. Hosick[1] knew his condition required daily monitoring of his blood sugar and consistent use of insulin and medication. He also understood the continuing risk of infections and further amputations. Despite this, after moving to Washington in July 2020, he stopped taking insulin and medication and did not monitor his blood sugar. Although he had insurance coverage in 2021, he did not seek any treatment or obtain insulin during that year.

Community Health Network of Washington (CHNW), traditionally a Medicaid and Medicare insurer, began offering commercial insurance plans through the Washington Health Benefit Exchange (WA Exchange) in 2021. Hosick, his wife Deanna, and their son were covered by a policy through CHNW in the early part of 2021. However, the Hosicks later stopped paying their premiums and, on April 27, CHNW warned them that they risked termination for nonpayment. The family failed to cure the default and CHNW cancelled their coverage effective May 31, 2021. Hosick then enrolled in a Molina Healthcare plan for the remainder of 2021.

In November of that year, during open enrollment for 2022, Hosick again enrolled his family in a CHNW "Cascade Select Plan" through the WA Exchange for the next plan year, with coverage to begin on January 1, 2022. He paid the $775.71 binder payment through the WA Exchange, which redirected him to CHNW's website, on the same day that he enrolled. CHNW's internal records show a payment date of November 22, 2021. CHNW deposited the payment, sent

---

[1] For clarity, because appellants share the same last name, we refer to Stephen Hosick by his last name and Deanna Hosick by her first name. No disrespect is intended.

Hosick insurance identification cards, a welcome letter, and a copy of the policy. CHNW asserted that the policy was binding.

The policy documents CHNW sent Hosick upon receipt of the binder payment included a "Health Care Coverage Agreement," described as a binding contract that outlined available benefits. In the agreement, CHNW promised to comply with applicable law and listed limited conditions under which it could cancel the policy. The contract stated it could not be terminated without mutual agreement, except in cases of nonpayment, fraud, misrepresentation, or material breach. CHNW also promised not to terminate the policy retroactively except for nonpayment.

Despite these assurances, CHNW internally rescinded the policy on January 5, 2022, more than six weeks after accepting Hosick's application and payment. Moreover, CHNW rescinded the policy retroactively to January 1 and did not refund Hosick's binder payment until February 1. However, CHNW apparently did not contemporaneously notify Hosick of the cancellation as no letter or e-mail was sent by its automated system. Nonetheless, on January 6, one day after rescinding coverage, CHNW e-mailed Hosick to thank him for "continuing as a CHNW member" and included documents for their "binding contract."

In mid-January, Hosick began to notice swelling in his right foot, which progressively worsened. Unaware of the rescission of his policy, Hosick contacted CHNW on January 27 to find a doctor for a suspected infection and only then learned he no longer had health care coverage. CHNW confirmed the rescission by voicemail on February 3 and urged him to seek other insurance. However,

open enrollment for health insurance had closed over two weeks prior, on January 15. On February 9, he received written confirmation of the cancellation of his policy.

Hosick then applied for a policy from Kaiser Permanente on February 13 but was denied on February 15 because the period for open enrollment had passed. The next day, after Deanna had consulted with an attorney who urged them to "go get care," Hosick went to the emergency room at St. Clare Hospital. He was admitted for a foot infection. Two days later, doctors amputated his right big toe after diagnosing Hosick with acute osteomyelitis. He remained hospitalized for two weeks and, after release, received daily outpatient antibiotics for his sepsis. Charity care offered by the hospital covered his $187,000 hospital bill. He paid for additional medical expenses, such as lab work, out of pocket.

On April 20, 2022, Hosick filed a lawsuit against CHNW for breach of contract, negligence, common law insurance bad faith, and violation of the Consumer Protection Act (CPA).[2] Deanna brought a related loss of consortium claim. They sought damages, reasonable attorney fees, and costs. On June 13, CHNW filed its answer and sought an allocation of fault under RCW 4.22.070. CHNW argued that the Hosicks failed to mitigate their damages and alleged that Hosick's own negligence caused or contributed to his injuries.

Before trial, on July 21, the Hosicks moved for partial summary judgment on his breach of contract and CPA claims. On August 18, the court granted summary judgment on the contract claim but left damages for the jury. The court

---

[2] Ch. 19.86 RCW.

denied summary judgment on the CPA claim which the Hosicks later voluntarily withdrew on January 27, 2024. The remaining claims, bad faith and negligence, were permitted to proceed to trial, along with the question of damages from the breach of contract.

On January 23, 2024, the Hosicks filed a motion in limine to exclude evidence of Hosick's treatment after January 27, 2022, the date he learned of the policy cancellation, absent expert testimony on segregation of damages, and any evidence of his treatment before January 27. As to the latter, the Hosicks argued CHNW lacked evidence to show a different outcome would have resulted if he had received care earlier.

The court, however, admitted the evidence regarding treatment before January 27, reasoning that it was relevant to the question of causation. The court concluded it could help the jury assess whether Hosick's failure to manage his diabetes before January 27 exacerbated the infection that led to a toe amputation in February 2022. The court also ruled that the evidence related to whether Hosick had acted reasonably in delaying care, despite his history of diabetes complications and prior amputation, was relevant to the question of failure to mitigate.

At trial, CHNW asked the court to instruct the jury to allocate fault to Hosick for failing to manage his diabetes and for delaying treatment after the rescission of his health insurance policy. The court gave standard Washington pattern jury instructions, including those addressing preexisting conditions and allocation of fault. Specifically, jury instruction 7 included the following language, without

limiting the jurors' analysis of these questions to only the period after coverage ended:

> Defendant CHNW claims as an affirmative defense that Plaintiff Mr. Hosick was contributorily negligent by failing to follow his prescribed treatment plan and by failing to timely seek medical treatment.
> Defendant CHNW claims that Plaintiff Mr. Hosick's conduct was a proximate cause of Mr. Hosick's own injuries and Mr. Hosick and M[r]s. Hosick's damage. Plaintiffs Mr. and M[r]s. Hosick deny these claims.

The court's instructions to the jury also included the definition of contributory negligence, directives on the process to apportion fault, and explanation of the role such a determination would have in any award of damages.

The Hosicks had proposed a limiting instruction that would have barred the jury from attributing fault to Hosick for developing the infection or for any act that led to it. Their proposed instruction expressly stated that the jury "may not attribute contributory negligence in this matter to Mr. Hosick for developing an infection or any act or omission that led to him developing an infection." They argued that Hosick had no duty to be in sound health when he sought out medical insurance coverage on the WA Exchange. They contended that Hosick would be prejudiced without the proper instructions because the jury would mistakenly believe that it could find comparative fault for the infection, when liability for the amputation was the only question before the jury. The trial court rejected the Hosicks' proposed limiting instruction.

The jury rendered its verdict on March 19. It rejected Hosick's bad faith claim but found CHNW negligent and awarded $2.6 million in noneconomic damages to Hosick and $100,000 to Deanna for her loss of consortium claim. The

jury also found Hosick had breached a duty of care and that his breach proximately caused 90 percent of the harm. CHNW had learned a few days prior to the conclusion of trial that Hosick was also seeking $3,485.49 in economic damages based on the out-of-pocket expenses incurred as a result of the amputation and agreed to pay it. That amount was included in the final judgment entered by the court on April 4. Based on the jury's attributing 90 percent of fault to Hosick, the trial court reduced the noneconomic damages to $270,000 in the judgment on verdict.

On April 12, the Hosicks moved for attorney fees under CR 54 for the breach of contract claim pursuant to *Olympic Steamship Co. v. Centennial Insurance Co.*,[3] which allows insureds to recover fees when suing to establish coverage. The Hosicks asked the trial court to require CHNW to pay for all their attorneys' reasonable time, valued at $148,868.20, and their litigation expenses of $151,227.13. The Hosicks' request totaled $300,095.33. The court limited recovery to fees tied to the contract claim, concluding that once it resolved coverage at summary judgment, *Olympic Steamship* no longer applied. The trial court awarded $60,487 in attorney fees to the Hosicks.

The Hosicks timely appealed.[4]

---

[3] 117 Wn.2d 37, 53, 811 P.2d 673 (1991).
[4] The Hosicks filed a notice of appeal on May 1, 2024, designating only the April 4, 2024 judgment on verdict but later filed an amended notice of appeal to include the May 29, 2024 order on their CR 54 motion for attorney fees.

ANALYSIS

The Hosicks' opening brief presents 11 assignments of error (AoE), including the trial court's ruling on their motion in limine regarding pre-January 27 evidence (AoE 1), challenges to a minute order on supplemental briefing (AoE 2), jury instructions 7, 10, 11, and 12 (AoE 3-6), and a special verdict form (AoE 7). However, the Hosicks present no separate argument in their opening brief on any of these claimed errors. "A party that offers no argument in its opening brief on a claimed assignment of error waives the assignment." *Brown v. Vail*, 169 Wn.2d 318, 336 n.11, 237 P.3d 263 (2010); *see also Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). RAP 10.3(a)(6) directs each party to supply in its brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." Failure to provide argument and citation to authority in support of an assignment of error precludes appellate consideration under RAP 10.3(a)(6). *Billings v. Town of Steilacoom,* 2 Wn. App. 2d 1, 21, 408 P.3d 1123 (2017). Accordingly, assignments of error not discussed in a party's brief are typically deemed abandoned. *Quilang v. Dep't of Soc. & Health Servs.*, 25 Wn. App. 2d 164, 180, 527 P.3d 73 (2022). However, assignments of error 1, 2, 3, 4, 5, 6, and 7 are thematically linked with the Hosicks' argument in support of AoE 8 regarding the trial court's entry of judgment on the jury verdict and so were indirectly addressed in that portion of their briefing. Further, their contentions were sufficiently clear such that CHNW was able to comprehensively respond to them in its briefing. As such, we reach the merits of those assignments of error, despite

the failure to comply with RAP 10.3(a)(6).  *See* RAP 1.2 ("[R]ules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits.").

I.      Instructional Error

We review errors of law in jury instructions de novo.  *Fergen v. Sestero*, 182 Wn.2d 794, 803, 346 P.3d 708 (2015).  If the trial court issues an instruction that misstates the law, prejudice is presumed unless the error is harmless.  *Id*.  The party challenging an instruction bears the burden of establishing prejudice.  *Griffin v. W. RS, Inc.,* 143 Wn.2d 81, 91, 18 P.3d 558 (2001).  "Absent a legal error, we review a court's decision regarding the specific language in the instruction for an abuse of discretion."  *Helmbreck v. McPhee*, 15 Wn. App. 2d 41, 57, 476 P.3d 589 (2020).  "A trial court has broad discretion in determining the wording of jury instructions."  *Id*.  "It abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds."  *Id*.

Separately, our State Supreme Court has long held that jury instructions must be supported by some evidence.  *See Lindsey v. Elkins*, 154 Wash. 588, 611-12, 283 P. 447 (1929); *Grapp v. Peterson*, 25 Wn.2d 44, 49, 168 P.2d 400 (1946); *Richards v. Sicks' Rainier Brewing Co.*, 64 Wn.2d 357, 360, 391 P.2d 960 (1964); *Fergen*, 182 Wn.2d at 803.  However, "[t]he party challenging the instruction bears the burden of demonstrating prejudice."  *Roemmich v. 3M Co.*, 21 Wn. App. 2d 939, 948, 509 P.3d 306 (2022).  "It is axiomatic that prejudicial error occurs where the jury is instructed on an issue that lacks substantial evidence to support it."  *Haynes v. Moore*, 14 Wn. App. 668, 672, 545 P.2d 28 (1975).

"A negligence claim requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." *Pellham v. Let's Go Tubing, Inc.*, 199 Wn. App. 399, 408, 398 P.3d 1205 (2017). "'Washington recognizes two elements to proximate cause: [c]ause in fact and legal causation.'" *Wuthrich v. King County*, 185 Wn.2d 19, 28, 366 P.3d 926 (2016) (alteration in original) (internal quotation marks omitted) (quoting *Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387 (2013)).[5]

The Hosicks argue that the trial court erred by giving a contributory negligence instruction in a case centering on a health insurer's wrongful rescission of coverage. They contend that the court should have barred the jury from considering Hosick's conduct with regard to his health care before CHNW denied coverage on January 27, 2022. We agree.

At trial, the judge issued jury instruction 7, which stated in relevant part:

> Plaintiffs claim that Defendant CHNW breached a duty of care owed to Mr. Hosick by failing to provide him with health insurance coverage. Plaintiffs claim that Defendant CHNW's conduct was a proximate cause of injuries to Mr. Hosick and damage to Mr. and M[r]s. Hosick. Defendant CHNW denies these claims.
> In addition, Defendant CHNW claims as an affirmative defense that Plaintiff Mr. Hosick was contributorily negligent by failing to follow his prescribed treatment plan and by failing to timely seek medical treatment.
> Defendant CHNW claims that Plaintiff Mr. Hosick's conduct was a proximate cause of Mr. Hosick's own injuries and Mr. Hosick and M[r]s. Hosick's damage. Plaintiffs Mr. and M[r]s. Hosick deny these claims.

---

[5] We recognize that a member of this panel has opined that cause in fact and legal causation are separate and distinct elements of a negligence claim rather than elements of proximate cause. *Zorchenko v. City of Federal Way*, 31 Wn. App. 2d 390, 401-04, 549 P.3d 743 (Feldman, J. concurring), *review denied,* 3 Wn.3d 1026 (2024). As an intermediate appellate court, however, we follow the controlling precedent of our Supreme Court.

Jury instruction 10 defined contributory negligence as "negligence on the part of a person claiming injury or damage that is a proximate cause of the injury or damage claimed." Jury instruction 11 directed that if the jury found contributory negligence, it "must determine the degree of negligence expressed as a percentage, attributable to the person claiming injury or damage" and advised that the court would "furnish [the jury with] a special verdict form for this purpose." Instruction 11 further explained that the jury's answers to the questions posed in the special verdict form would "furnish the basis by which the court will apportion damages; if any." Then, jury instruction 12 explained mitigation as follows:

> A person who is liable for an injury to another is not liable for any damages arising after the original injury or event that are proximately caused by failure of the injured person to exercise ordinary care to avoid or minimize such new or increased damages.
> In determining whether, in the exercise of ordinary care, a person should have secured or submitted to medical treatment, as contended by Defendant CHNW, you may consider the nature of the treatment, the probability of success of such treatment, the risk involved in such treatment, and all of the surrounding circumstances.
> Defendant CHNW has the burden to prove Plaintiff Mr. Hosick's failure to exercise ordinary care and the amount of damages, if any, that would have been minimized or avoided.

The jury found by special verdict that Hosick breached a duty of ordinary care and his breach proximately caused the injury or damage underlying his claims against CHNW. These findings appeared under the composite heading "Contributory Negligence/Failure to Mitigate/Failure to Seek Timely Medical Treatment" in the amended special verdict form provided by the trial court. That phrasing and presentation of a single amalgamated special verdict question conflated distinct legal doctrines and heightened the risk of confusion already

- 11 -

created by the jury instructions that failed to constrain the jury's consideration of the related, but discreet, constructs of contributory negligence and mitigation to particular periods of time and causes of action.

During oral argument before this court, both parties further blurred the boundary between the two distinct legal concepts of comparative fault and failure to mitigate. Though both doctrines can impact the damages recoverable by a plaintiff, they differ significantly. *Compare ESCA Corp. v. KPMG Peat Marwick*, 135 Wn.2d 820, 830, 959 P.2d 651 (1998) ("Contributory negligence no longer operates to bar recovery by a tort victim but may affect the damages recovered." (footnote omitted)), *with Jaeger v. Cleaver Const., Inc.*, 148 Wn. App. 698, 714, 201 P.3d 1028 (2009) ("The doctrine of avoidable consequences, or mitigation of damages, prevents an injured party from recovering damages that the party could have avoided through reasonable efforts.").

A.     Comparative Fault and Contributory Negligence

Washington law permits comparative fault defenses under RCW 4.22.005, though it uses the term "contributory fault." A defendant may assert an affirmative defense of comparative fault against a plaintiff's claim. *Hendrickson v. Moses Lake Sch. Dist.*, 192 Wn.2d 269, 284, 428 P.3d 1197 (2018) (citing RCW 4.22.005). When it applies, RCW 4.22.070(1) requires a jury to allocate percentages of fault among all entities responsible for the plaintiff's harm.

Contributory negligence refers to the plaintiff's pre-injury conduct falling below the applicable standard of care. *See Skarpness v. Port of Seattle*, 52 Wn.2d 490, 494, 326 P.2d 747 (1958) (defining contributory negligence as "'involving

- 12 -

some breach of duty on the part of the injured person'" (quoting *Ewer v. Johnson*, 44 Wn.2d 746, 759, 270 P.2d 813 (1954))). It is recognized as an affirmative defense and the burden rests on the party asserting contributory negligence to prove it. *Hughey v. Winthrop Motor Co.*, 61 Wn.2d 227, 229, 377 P.2d 640 (1963). Previously, contributory negligence operated as a complete bar to a plaintiff's recovery. *See Hynek v. City of Seattle*, 7 Wn.2d 386, 111 P.2d 247 (1941) ("'[W]henever the plaintiff's case shows any want of ordinary care under the circumstances, even the slightest, contributing in any degree, even the smallest, as a proximate cause of the injury for which [they] brings his action, [their] right to recover is thereby destroyed.'" (quoting CHARLES FISK BEACH, CONTRIBUTORY NEGLIGENCE 50, § 35 (3rd Ed. 1899))). While contributory negligence and comparative fault originated as distinct concepts, the terminology has been somewhat fluid and terms are often used interchangeably since our state adopted comparative fault. *See, e.g., Hickly v. Bare*, 135 Wn. App. 676, 683, 145 P.3d 433 (2006) (referring to "jury instructions on contributory negligence/comparative fault").

Here, the Hosicks argue that fault, if any, should only be apportioned after CHNW denied coverage on January 27, 2022. They contend the "jury instructions permitted CHNW to argue that Hosick's chronic diabetes, rather than CHNW's negligence in rescinding the policy and denying coverage, caused Hosick's damages." They point to CHNW's position during trial that Hosick was contributorily negligent as far back as August 2021.

During oral argument before this court, the Hosicks maintained that the negligent act was CHNW's denial of coverage, which led to Hosick's delay in obtaining necessary care and ultimately resulted in the amputation of his toe.[6] The Hosicks rely on *Keogan v. Holy Family Hospital* to argue that patients retain a right to refuse medical treatment and control their own bodies. 95 Wn.2d 306, 313-14, 622 P.2d 1246 (1980). They contend that this right precludes a duty to seek medical treatment on a specific timeline or at an insurer's convenience. While they concede that no Washington case has recognized a categorical bar against comparative fault in this context, they nonetheless argue that such a rule is necessary to preserve the insurers' incentive to provide coverage in good faith.

The Hosicks then cite *Mohr v. Grantham*, which held that liability attaches for negligent medical care that causes loss of a chance at recovery. 172 Wn.2d 844, 856, 262 P.3d 490 (2011). They reason that a similar deterrent function should apply to insurers. While *Mohr* does recognize the importance of deterring negligent care, it does not prohibit comparative fault where a plaintiff's delay in treatment contributes to injury. The Hosicks also point to Washington's eggshell plaintiff doctrine to argue that a defendant must take the plaintiff as it finds them. WPI 30.17 and 30.18 explain that defendants are liable for aggravating preexisting conditions and may not reduce damages by arguing that the plaintiff was already in poor health. *See Hoskins v. Reich*, 142 Wn. App. 557, 570, 174 P.3d 1250

---

[6] Wash. Ct. of Appeals oral arg., *Hosick v. Cmty. Health Network*, No. 86636-2-I (June 12, 2025), at 5 min., 5 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025061176/.

(2008) ("only evidence of the natural progression of a preexisting condition is relevant to damages").

CHNW argues that Hosick is not contributorily negligent for being diabetic, but for ignoring worsening symptoms. CHNW points to testimony that Hosick noticed calluses on his affected toe and had been aware of his toe infection as early as August 2021. It asserts that Hosick should not shift the entire financial burden for an avoidable injury to someone else. CHNW contends that this case is not about denial of coverage on those grounds but, rather, about comparative causation of the claimed injury. This is true, but CHNW's argument on this point rests on a fundamental misconception of the injury at issue.

At oral argument in this court, CHNW stated that "if [we] merely cancelled coverage, we wouldn't be here today. We cancelled coverage and for reasons unrelated to the cancellation of coverage, his toe was amputated."[7] CHNW later claimed that the "cancellation was not his injury, cancellation of the insurance policy didn't cause his toe to be amputated, didn't cause the swelling."[8] But, as set out in Part I, *supra,* the cancellation of the policy is precisely the injury claimed by the Hosicks in the breach of contract cause resolved on summary judgment and the negligence cause decided by the jury. The Hosicks' theory of the case is that the amputation and resulting medical expenses are damages that resulted from the improper cancellation of their health care coverage. CHNW properly conceded during oral argument in this court that Hosick's failure to seek care did not

---

[7] Wash. Ct. of Appeals oral arg., *supra,* at 10 min., 13 sec.
[8] *Id.* at 10 min., 55 sec.

contribute to the cancellation of his insurance policy.[9] Comparative fault cannot apply to conduct unrelated to CHNW's rescission of the Hosicks' health insurance.

### B.     Failure To Mitigate

In contrast to comparative fault, failure to mitigate is a doctrine that may apply to a plaintiff's post-injury conduct.   When mitigation involves medical treatment, the defense must show that reasonable treatment alternatives existed and "the plaintiff acted unreasonably in deciding on treatment."  *Salisbury v. City of Seattle*, 25 Wn. App. 2d 305, 321, 522 P.3d 1019 (2023).  "The defendant's burden of proof to establish failure to mitigate includes a causation component." *Id.* at 322.  "There must be 'expert testimony' to show that 'reasonable alternatives were available.'"  *Id.* (quoting *Fox v. Evans*, 127 Wn. App. 300, 308, 111 P.3d 267 (2005)).  "'This testimony is required so that the jury does not base its decision on speculation.'"  *Id.* (quoting *Fox,* 127 Wn. App. at 308).

RCW 4.22.070(1) provides, "In all actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages."  The statute further establishes that the entities whose percentage of fault the trier of fact should determine include the plaintiff, "defendants, third-party defendants, entities released by the claimant, entities with any other individual defense against the claimant, and entities immune from liability to the claimant."  RCW 4.22.070(1). "Under RCW 4.22.070, the foundation of fault apportionment is that all tortfeasors responsible to the injured plaintiff are identified and a percentage of fault is

---

[9] *Id.* at 11 min., 24 sec.

assigned among them." *Smelser v. Paul*, 188 Wn.2d 648, 653, 398 P.3d 1086 (2017).

Jury instruction 12 explained the concept of mitigation and advised the jury that CHNW had the burden to prove that Hosick failed to meet an ordinary duty of care to reduce the damages that resulted from his injury. However, CHNW was also required to produce expert testimony that reasonable medical treatments were available and Hosick unreasonably failed to pursue them. *See Salisbury*, 25 Wn. App. 2d at 322 (expert testimony required to establish availability of reasonable alternatives and prevent verdict based on speculation). At oral argument before this court, CHNW admitted that it offered no expert testimony at trial in support of a mitigation defense.[10] Because CHNW failed to carry its evidentiary burden to present expert testimony to the jury to show that Hosick's efforts at mitigation, or lack thereof, caused any discernable difference in his health outcome, the court should not have instructed the jury on mitigation. *See Haynes*, 14 Wn. App. at 672 ("[P]rejudicial error occurs where the jury is instructed on an issue that lacks substantial evidence to support it.").

C.      Misapplication of Comparative Fault and Mitigation Doctrines at Trial

CHNW's internal policy that triggered cancellation of the Hosicks' medical coverage in January 2022, barring extension of insurance policies to people who previously had a CHNW policy terminated for nonpayment, violated federal law, WAC 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, WAC 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, and the WA Exchange's policies and procedures. CHNW's breach of its duty of good faith to uphold its contract with the

---

[10] *Id.* at 18 min., 37 sec.

Hosicks for medical coverage caused the harm that was alleged in the Hosicks' complaint, not the decisions Hosick made as to the management of his diabetes. Here, the timeline and causes of action were not appropriately framed, and the jury heard that Hosick had been diabetic since his mid-30s, had lost his left big toe in 2017, and had previously suffered necrosis in his hand.

The Hosicks argue that the trial court's instructions that allowed the jury to assign fault for Hosick's general health or delay in care before January 27 undermined the legal significance of CHNW's duty as an insurer to provide coverage without regard for the medical histories that cause people to seek insurance in the first place. If a jury could assign fault for the very conditions that prompted enrollment, they contend, the insurer's duty would lose meaning. We agree.

Here, jury instructions 7, 10, and 11 improperly permitted the jurors to consider contributory negligence, and the special verdict form grouped multiple legal doctrines, contributory negligence, mitigation, and failure to timely seek medical treatment, under a single heading. The manner by which the trial court instructed the jury permitted it to consider conduct such as chronic diabetes management and delays in treatment that occurred before CHNW improperly denied the Hosicks' coverage. But, comparative fault was not an applicable legal theory given the facts of the case and the causes of action pleaded by the Hosicks. The court's instructions and special verdict form misled the jury by failing to distinguish between pre- and post-denial conduct. The jury's finding that Hosick was 90 percent at fault is ambiguous. We cannot determine from the record before

- 18 -

us whether that allocation applied solely to post-denial delay, mitigation, or also to Hosick's pre-denial conduct, comparative fault. The only relevant issue here was mitigation; what steps Hosick took to address his medical condition after he learned on January 27 that he lacked health care coverage. CHNW conceded at oral argument in this court that it offered no expert testimony in support of a mitigation defense; either to show that mitigation efforts or lack thereof caused a measurable difference in Hosick's medical outcome.[11] As such, its own admissions confirm that Hosick's earlier conduct did not influence coverage denial.

Hosick preserved his objection and proposed a valid alternative instruction. The jury instructions, as provided by the trial court here, misled the jury. Because that error likely affected the verdict, we presume prejudice. *Fergen*, 182 Wn.2d at 803. Accordingly, we reverse, vacate the portion of this verdict finding contributory negligence and failure to mitigate, and remand for the trial court to enter a corrected judgment that reinstates the amount of noneconomic damages as found by the jury.

II.     Evidentiary Rulings

The Hosicks' meritorious claims of instructional error necessarily intersect with their separate challenges to various evidentiary rulings. They assert that the trial court erred in admitting evidence of Hosick's conduct with respect to his medical care and diabetes before the family health insurance plan was cancelled on January 27, 2022. This is so, they aver, because the doctrine of contributory negligence/comparative fault was not applicable given the manner by which they

---

[11] *Id.* at 18 min., 37 sec.

presented their causes of action. They additionally assign error to the trial court's denial of their motion in limine that sought to exclude post-cancellation evidence related to CHNW's mitigation theory because it lacked the required expert testimony to establish what reasonable alternatives were available to Hosick and how they would have impacted the damages had they been pursued. In light of our holding as to the applicability of the doctrines analyzed in Part I, *supra*, we reach the merits of these challenges as well.

### A. Identification of Claimed Injury

Key to the resolution of the Hosicks' assignments of error regarding admissibility of pre- and post-cancellation evidence and evidentiary error is a clear understanding of the Hosicks' causes of action and claimed injury. The Hosicks' April 2022 complaint for damages presented claims for breach of contract, negligence, common law insurance bad faith, and under the CPA. Specifically, they alleged that while CHNW had reserved the "right to refuse enrollment to any person whose coverage under any contract for medical coverage issued by CHNW has been terminated for cause" as the Hosicks' had been in the spring of 2021, the insurance provider,

> did not refuse to enroll Mr. Hosick. Instead, it enrolled him, provided him insurance cards, sent him a copy of his plan/contract, and an e[-]mail welcoming him. Then, when he tried to access the benefits to which he was entitled to [sic] under this valid contract, it unilaterally and without his permission terminated the contract.

With regard to the negligence and insurance bad faith claim, the Hosicks asserted that "CHNW failed to meet its common [law] duty of good faith when it breached the valid contract it had with Mr. Hosick by making the *unreasonable decision to*

*unilaterally terminate him and by refusing his request to review/appeal the decision.*" (Emphasis added.) In particular, they averred that CHNW's "unreasonable decisions breached its duty of good faith," it "*negligently adjudicated Mr. Hosick's contract and claims*," and they were "*harmed by CHNW's unreasonable decisions* by including, but not limited to, having to pay out-of-pocket for medical treatment and surgery that should have been covered under his policy" and "damaged financially and emotionally by [CHNW]'s unreasonable decision." (Emphasis added.) Finally, as to the CPA claim, the Hosicks specifically alleged that they "were *injured as to their property by, without limitation, having to pay out-of-pocket for health treatment that should have been covered under the health insurance contract at issue*." (Emphasis added.)

Several months later, the Hosicks moved for partial summary judgment that sought conclusions from the trial court that CHNW was alternately "bound by its agents' representations that Mr. Hosick had medical insurance and/or equitably estopped from denying coverage," that Hosick "had a valid contract with CHNW for the plan year 2022 as of November 18, 2021 when it accepted Mr. Hosick's application and binder payment," and that "CHNW breached the contract when it unilaterally rescinded Mr. Hosick's contract in violation [of] its express promise not to terminate absent fraud/misrepresentation and in violation of federal and state anti-rescission laws and regulations that are additional terms of the insurance

contract." The trial court granted summary judgment on the question of breach of the insurance contract but reserved the issue of damages for trial.[12]

While the Hosicks sought special, general, and compensatory damages, and to recover for Deanna's loss of consortium claim, as well as their costs and attorney fees, the only *injury* the Hosicks ever claimed was the improper cancellation of the insurance policy. With these facts in mind, we turn to the evidentiary rulings challenged on appeal.

B.      Admission of Evidence of Conduct Prior to Policy Cancellation

The trial court denied the Hosicks' motion in limine that sought the exclusion of any evidence of Hosick's failure to comply with his diabetes treatment plan prior to cancellation of his insurance policy on January 27. In its "Minute Order on Parties' Supplemental Briefing re: Contributory Negligence," the court concluded that evidence regarding Hosick's management of his disease was relevant to the question of causation. Specifically, the trial court stated the following:

> To the extent the medical records from 2015 to 2020 and related testimony may be relevant to Mr. Hosick's chronic diabetes, and whether he was thus vulnerable to an acute infection in January-February 2022, they would be generally relevant, subject to ER 403 and other applicable evidentiary objections. And Mr. Hosick has already testified that he suffered post-surgery pain, swelling, redness, tenderness, and a related inability to be as mobile as before January-February 2022, without any temporal limitation on his claim for future effects of the amputation. This also encompasses the question of Mr. Hosick's chronic diabetes, alleged by the defense medical experts, rather than the narrower question of acute diabetes, and the implication that the chronic diabetes may have caused any recurring swelling and tenderness, rather than the amputation itself. Finally, in cross-examination, Mr. Hosick has also already referred to

---

[12] Again, the Hosicks also sought an order on summary judgment regarding the CPA claim, which was denied by the trial court. The Hosicks ultimately withdrew the CPA cause of action prior to trial.

the medical treatment and decisions he made regarding the loss of the left toe, including events in the 2015-2020 period. This testimony thus opened the door to that period of medical treatment.

For these reasons, the [c]ourt will allow the defense to explore the 2015-2020 medical.

However, this evidentiary ruling rests on the same error of law that resulted in the trial court's improper issuance of a jury instruction on contributory negligence analyzed in Part I, *supra*.

ER 401 defines "[r]elevant evidence" as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 402 then establishes that "[a]ll relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute, by these rules, or by other rules or regulations applicable in the courts of this state. *Evidence which is not relevant is not admissible*." (Emphasis added.) Again, the identified injury underlying the various causes of action was the improper termination of the Hosicks' health insurance plan and denial of their medical coverage. It is unclear how anything about Hosick's prior medical history related to his diabetes could have made any fact regarding CHNW's decision to terminate his policy more or less probable. Accordingly, and for the same reasons set out in Sections I.A and I.C, *supra,* with regard to the misapplication of the doctrine of contributory negligence/comparative fault, the court erred both as to its conclusion that this evidence was relevant and its ultimate ruling on its admission as to the issue of comparative fault.

C.    Admission of Post-Cancellation Evidence

The court also admitted evidence of Hosick's decisions about pursuing medical treatment for his toe after he learned of the cancellation. The same minute order on supplemental briefing regarding contributory negligence set out in Section II.B, *supra*, notes that the court considered the relevance of this evidence in the context of the following question: "Based on [Hosick]'s experience with the previous amputation of his left toe, did [he] fail to act reasonably in not obtaining emergency care sooner for his right toe, after noticing symptoms of infection in January 2022?" The Hosicks are correct that admission of this evidence was improper because its relevance rises and falls with the question of the propriety of instructing the jury on failure to mitigate. As analyzed in Section I.B, *supra*, CHNW did not carry its burden as the proponent of the affirmative defense of failure to mitigate because it failed to provide the requisite expert testimony to "show that 'reasonable [treatment] alternatives were available." *Salisbury*, 25 Wn. App. 2d at 322 (quoting *Fox*, 127 Wn. App. at 308).

Further, the framing of this issue in the court's minute entry regarding contributory negligence suggests that the court may have fundamentally misunderstood the temporal limitations on failure to mitigate, even if CHNW had provided the proper evidentiary foundation, as it appeared to consider evidence of Hosick's actions pre-cancellation in addition to post-cancellation conduct when answering its question regarding the reasonableness of his decisions about seeking care. As such, admission of this evidence on these bases constitutes an abuse of discretion.

III.    Partial Denial of Request for Attorney Fees After Trial

The Hosicks separately designated the trial court's May 2024 attorney fee award in their amended notice of appeal.  In the trial court, they sought fees in part based on our Supreme Court's *Olympic Steamship Co. v. Centennial Insurance Co.* opinion.  117 Wn.2d 37, 811 P.2d 673 (1991).  *Olympic Steamship* held that attorney fees are "required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of [their] insurance contract, regardless of whether the insurer's duty to defend is at issue."  117 Wn.2d at 53.  The Hosicks requested fees in a total amount of $300,095.33, but the trial court only awarded fees associated with the breach of contract claim up to the point liability was determined because it ruled that *Olympic Steamship* did not apply after the Hosicks prevailed on that claim at summary judgment.

Washington adheres to the "'American rule'" for attorney fees, which generally requires each party to bear its own fees.  *N.Y. Life Ins. Co. v. Mitchell*, 1 Wn.3d 545, 569, 528 P.3d 1269 (2023) (quoting *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 143, 930 P.2d 288 (1997)).  Under the American rule, a court may award fees only when doing so is authorized by a contract provision, a statute, or a recognized ground in equity.  *Id.*  Here, the equitable ground is the rule announced in *Olympic Steamship.*  *See* 117 Wn.2d at 53.

Whether a party is legally entitled to recover attorney fees is a question of law that we review de novo.  *King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV,* 188 Wn.2d 618, 625, 398 P.3d 1093 (2017).  "Whether the amount of fees awarded was reasonable is reviewed for an abuse of

discretion." *Baker v. Fireman's Fund Ins. Co.*, 5 Wn. App. 2d 604, 613, 428 P.3d 155 (2018)*.* "In order to reverse an attorney fee award, an appellate court must find the trial court manifestly abused its discretion." *Pham v. Seattle City Light*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). "That is, the trial court must have exercised its discretion on untenable grounds or for untenable reasons." *Id.* Where authority exists to recover fees for "'only some of the claims, the attorney fees award must properly reflect a segregation of the time spent on issues for which attorney fees are authorized from time spent on other issues.'" *Vinci Constr.*, 188 Wn.2d at 632 (quoting *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 672, 880 P.2d 988 (1994)).

The Hosicks argue that the trial court erred in denying their request for attorney fees incurred after August 18, 2023 for the litigation following the trial court's ruling on partial summary judgment that established CHNW's liability for the breach of contract claim. They contend that although the court found a breach of contract, the full extent of coverage remained unresolved until the conclusion of trial. The Hosicks aver that CHNW continued to deny its responsibility to pay for Hosick's medical expenses, compelling him to litigate to verdict in order to establish the scope of benefits. Accordingly, they assert that the case remained a coverage dispute until the day when a final judgment was entered on the jury's verdict.

CHNW counters that *Olympic Steamship* applies only to disputes about the existence of coverage, not to cases involving post-coverage damages or tort claims. It argues that once the trial court granted summary judgment in Hosick's

- 26 -

favor on the breach of contract claim, the coverage issue was resolved. We disagree.

Here, the court's August 18 order on summary judgment resolved CHNW's liability for breach but left unresolved the question of damages. Even though *Olympic Steamship* does not apply to tort claims, Hosick's claim for damages after summary judgment still arose from breach of contract. CHNW emphasizes its agreement to pay the $3,485.49 in economic damages the Hosicks sought based on the out-of-pocket medical expenses from the hospitalization and amputation. However, the court found that CHNW's agreement to pay occurred on March 15, a Friday in 2024, and it is clear from the record that the jury rendered its verdict on Tuesday, March 19 after the parties made their closing arguments on Monday, March 18.

The trial court abused its discretion in limiting its fee award to only those fees incurred up to August 18, 2023 because the Hosicks' equitable ground for this portion of their fee request was rooted in a contractual claim and the trial court did not resolve the question of damages from that claim on summary judgment. Damages were determined by the jury in its March 19 verdict, which was handed down two business days after CHNW accepted responsibility for the noneconomic damages from the breach of contract claim and apparently without any awareness of that development. As such, that question remained live until the conclusion of trial. The Hosicks are entitled to reasonable attorney fees and costs under *Olympic Steamship* through trial, subject to segregation if applicable. *See Vinci Constr.*, 188 Wn.2d at 632.

IV.     Attorney Fees on Appeal under *Olympic Steamship* and RAP 18.1

The Hosicks request an award of attorney fees on appeal under the equitable principles discussed in *Olympic Steamship* and RAP 18.1 and properly devoted a portion of their opening brief to their request.  The Hosicks have prevailed and are entitled to attorney fees under that authority, subject to their compliance with the procedural requirements of the RAPs.

Reversed and remanded for further proceedings consistent with this opinion.

WE CONCUR:

Feldman, J.                    Coburn, J.